[Crim. No. 6064. Second Dist., Div. One. Feb. 4, 1959.]

THE PEOPLE, Respondent, v. RANDALL HUNT
ROBERTSON, Appellant.

Randall Hunt Robertson, in pro. per., for Appellant.

Stanley Mosk, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

LILLIE, J.—Defendant appeals from a judgment, after trial by jury, whereby he was convicted of three counts of grand theft (Pen. Code, § 187, subd. 1) and one count of petit theft, being a lesser and included offense than that charged in the fourth count of the information. The trial court denied motion for new trial and his application for probation, and sentenced defendant to the state's prison for the term prescribed by law and to the county jail for six months, the terms to run concurrently.

The prosecution arose out of defendant's activities in securing fraudulent charge accounts at various business establishments. Count I involved the theft from Butler Brothers of household appliances and other merchandise valued in excess of $600; Count II charged the unlawful taking from May Company's Wilshire store of jewelry and other articles over the value of $200; Count III pertained to the theft of merchandise worth more than $1,000 from J. W. Robinson Company, and Count IV involved a similar unlawful transaction with I. Magnin and Company respecting articles valued in excess of $200.

Appellant contends that the evidence was insufficient to convict him on Counts I, II and III; the district attorney and trial judge were guilty of prejudicial misconduct; errors occurred in the admission of certain evidence and errors were committed in the giving and refusing of certain instructions.

Preliminarily, appellant's notice of appeal was tardily filed, being in the form of a telegram dispatched by appellant and received by the clerk on the third day following the expiration of the 10-day statutory period. The attorney general having raised the point in respondent's brief, appellant in his closing brief has set forth certain matters explanatory of the late filing, and we have entertained a countershowing by the respondent which tends to negative appellant's claims. Although appellant's showing falls short of the "clear and positive testimony" found in *People* v. *Slobodion,* 30 Cal.2d 362 [181 P.2d 867], we are disposed to consider the appeal on its merits.

Appellant challenges the sufficiency of the evidence to support his conviction on Counts I, II and III. The first of such counts, as heretofore noted, involved his transactions with Butler Brothers where, it appears, in December of 1956, he applied in writing for credit, and represented on the application form that he had a bank account with the Palm Springs office of Bank of America and was listed with Dunn and Bradstreet. Appellant told the credit interviewer he owned Spectrum Electronics at a given address and had been in that business for one year. A 30-day charge account was opened, and appellant charged merchandise totalling more than $100 over a three-month period. On January 7, 1957, a washer and dryer, valued at $520.30 were delivered to the appellant at his residence address upon his representations in the credit application. This purchase was not, however, charged to appellant's account, but delivered with a conditional sales contract. Appellant did not sign the contract and the machines were subsequently repossessed by the seller upon receipt of information that the appellant was in custody. No loss was sustained by the store, although appellant paid no part of the merchandise charged under the 30-day account.

It was established that appellant never had an account in any form during November and December of 1956 with the bank at Palm Springs, and his only connection with Spectrum Electronics consisted of a short period of employment, by the real owners, to obtain television sets for demonstration and to secure a Dunn and Bradstreet rating for the firm. A pending agreement by which appellant would become a partner never materialized. Prior to December 20, 1956, there was no record of any Dunn and Bradstreet report on appellant, individually.

Appellant took the stand in his defense and under cross-

examination made the following admissions: That he had misrepresented certain facts in the Butler Brothers' credit application and credit applications at other stores; that his income for the entire year of 1956 was between three and four thousand dollars and that he had charged over three thousand dollars' worth of merchandise in the months of December, 1956, and January, 1957; that before such charges he had contracted other debts which were unpaid; that there were civil judgments outstanding against him; that earlier in 1956 he had charged a $5,000 bracelet for which he did not pay, but pawned for $950.

The foregoing facts, pursuant to the recognized rule on appeal, have been summarized in a light most favorable to respondent. Thereunder, we are required to assume in favor of the verdict every fact which the jury could reasonably have deduced from the evidence and to refrain from drawing contrary inferences (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]). Neither the law of this state nor these facts support appellant's claims concerning the insufficiency of the evidence to support his conviction.

 It is now well established that the offense of grand theft includes the crimes of larceny by trick and device and obtaining money by false pretenses (*People* v. *Ashley,* 42 Cal.2d 246, 258 [267 P.2d 271]), and a judgment of conviction of grand theft based on a general verdict of guilty, as here, can be sustained if the evidence discloses the elements of one of the two consolidated offenses (*People* v. *Massey,* 151 Cal.App.2d 623, 658 [312 P.2d 365]) ; "Larceny by trick and device is the appropriation of property, the possession of which was fraudulently acquired" (*People* v. *Ashley, supra,* 258) ; stated otherwise, "(i)f a person, with a preconceived design to appropriate the property to his own use, obtains possession of it by means of fraud or trickery, the taking is larceny" (*People* v. *Sing,* 42 Cal.App. 385, 391 [183 P. 865]), or "if the victim intends title to pass at some time later than the delivery, or upon the fulfillment of some condition not then performed, there may be a larceny." (*People* v. *Beilfuss,* 59 Cal.App.2d 83, 89-90 [138 P.2d 332].) Here the household appliances were delivered to appellant's residence upon the strength of credit fraudulently obtained from the vendor by virtue of a palpably preconceived design to misrepresent his financial standing, his personal holdings and his occupation status. Also, though obliged to do so, appellant neither signed nor returned the contract which was delivered

with the merchandise in question. The inference of larcenous intent was clearly deducible from the foregoing, as was the further inference that the vendor would not have parted with possession except for its reliance upon the fulfillment of a proper credit standing which, in appellant's case, was manifestly unobtainable in the light of his several admissions hereinbefore recounted. He cites to us the case of *People* v. *Potter*, 90 Cal.App. 94 [265 P. 365], where merchandise was obtained as the result of a representation that defendant had a deposit of $6,000 in a certain bank. This involved a different situation from that in the case at bar where the evidence established that appellant had no account of any kind with the bank of which he claimed to be a depositor. Nor is there any merit to appellant's implied suggestion that Butler Brothers did not sustain a loss in excess of $200 since the machines were repossessed. In cases of this kind financial loss is not a necessary element of the crime (*People* v. *Talbott*, 65 Cal.App.2d 654, 659 [151 P.2d 317]).

As to Count II, the record reveals that on December 12, 1956, appellant sought credit from May Company's Wilshire store and filled out an application card. He falsely told the interviewer that he was a doctor of osteopathy with offices on Santa Monica Boulevard. The credit department, on that representation, issued to him a temporary 30-day credit card which, appellant admitted, had a $50 limitation. On six different dates between December 12 and December 23, 1956, he charged items of merchandise worth $637.04, the largest single charge being in the amount of $89.34 for jewelry. Appellant paid no part of the total sum thus charged.

Contrary to appellant's contentions, the facts under this count establish the crime of theft by false pretenses, both title and possession having been deceitfully and fraudulently obtained (*People* v. *Ashley*, 42 Cal.2d 246, 258 [267 P.2d 271]). Appellant claims, however, that each of the numerous purchases should have been considered as individual offenses, each being below the statutory minimum of $200; and he relies on *People* v. *Rabe*, 202 Cal. 409, 413 [261 P. 303], to the effect that multiple takings accomplished by false pretenses constitute multiple offenses. In *People* v. *Howes*, 99 Cal.App.2d 808, 818 [222 P.2d 969], as well as *Dawson* v. *Superior Court*, 138 Cal.App.2d 685, 689 [292 P.2d 574], the reasoning of the Rabe case is discussed and distinguished from factual situations more applicable to the one at bar. "From these cases, and others that could be cited, it can

be said that the general test as to whether there are separate offenses or one offense is whether the evidence discloses one general intent or discloses separate and distinct intents. The particular facts . . . of each case determine the question. If there is but one intention, one general impulse, and one plan, even though there is a series of transactions, there is but one offense, and this is so whether the theft is accomplished by larceny or embezzlement." (*People v. Howes, supra*, 818-819.)

In *Dawson v. Superior Court*, 138 Cal.App.2d 685, 689 [292 P.2d 574], the court points out that by the 1927 amendment to section 484, Penal Code, the many technical niceties once existing between the various forms of larceny were abolished, and all are included under the term "theft." Consequently, "where a person intends by his false representations to initiate an act which will cause him to receive illegally various sums of money, it is far more reasonable to consider the whole plan rather than its component parts . . ."; as a result, the court concluded, a person may be guilty of grand theft by taking numerous benefit payments, all less than $200, from a county welfare department over a period of seven or eight months. The case here, of course, is much stronger, and the evidence justified the implied finding that appellant, discovering he could obtain merchandise on credit, proceeded during the initial monthly billing period to appropriate for himself as much as he could. Appellant's remaining contention as to Count II concerns the asserted inherent improbability of prosecution testimony relative to the extension of credit. The record does not bear out his claims in that respect, even though the store may not have used the best of business judgment on the occasion in question.

The third count of the information related to some nine or ten transactions with J. W. Robinson Company between December 14, 1956, and January 22, 1957. On those occasions, he charged approximately $2,100 worth of merchandise, the largest single item being $197 for a camera. He renews the argument that the purchases constituted, at most, a series of petty thefts, which contention has heretofore been discussed and disposed of. Appellant also claims that, absent some reliance by the store upon the assertedly false representations, the crime of theft has not been established, pointing out that some credit check was made through Dunn and Bradstreet before credit was extended. The record, however, reveals that reliance was also placed upon other representations

in appellant's application, including his statement that he was a doctor of osteopathy. The case of *People* v. *Daniels*, 64 Cal.App. 514, 517 [222 P. 387], cited by appellant, is thus distinguished; there, it appears, the victim made an independent investigation which was the sole inducement for his parting with his money. ■ As declared in *People* v. *Ashley*, 42 Cal.2d 246, 259 [267 P.2d 271]: ''The false pretense or representation must have materially influenced the owner to part with his property, but the false pretense need not be the *sole* inducing cause'' (emphasis added). Appellant further complains that it was error to admit the testimony of arresting officers concerning certain admissions made by him; this, because the corpus delicti had not then been established. The point is not well taken. More than a prima facie showing had been made by the prosecution prior thereto, and only ''slight or prima facie proof is sufficient for such purpose'' (*People* v. *Mehaffey*, 32 Cal.2d 535, 545 [197 P.2d 12]). Also, no error appears in the admission of testimony from the Dunn and Bradstreet representative, since the jury was advised that such evidence was received only to establish that no report was available on appellant prior to December 20, 1956. Finally, sufficient corroboration was forthcoming, the testimony of each victim being corroborative under the other counts.

■ Appellant next contends that prejudicial error occurred when the prosecutor was permitted, over objection, to question him concerning a $5,000 bracelet he had charged in New York earlier in 1956, and shortly thereafter pawned for $950. He claims that there was thus imputed to him a separate and distinct crime. ■ In *People* v. *Zerillo*, 36 Cal.2d 222, 228 [223 P.2d 223], the court said: ''(I)f a defendant takes the stand and makes a general denial of the crime with which he is charged the permissible scope of cross-examination is very wide'' to qualify the effect of such testimony. ■ In the case at bar, appellant testified that he intended to pay for the merchandise when he made his numerous purchases, and thus the intent to defraud became a material and necessary element of the People's case. The admissibility of the New York transaction is thus apparent; as stated in *People* v. *Weitz*, 42 Cal.2d 338, 347 [267 P.2d 295]: ''Inasmuch as the evidence related to transactions similar in material elements to the ones forming the basis of the indictment, it was admissible to show defendant's criminal intent. . . .'' The suggested imputation to appellant of still another crime by the reception of evidence as to the source of his income is not

borne out by the record. We have also examined the record carefully relative to appellant's claims that the trial judge, during the interrogation relating to the bracelet, gave the jury the impression that he had formed an opinion of appellant's guilt. To the contrary, it appears that the court evidenced the proper solicitude for appellant's rights, occasionally sustaining objections on his own motion and otherwise refraining from creating the impression complained of. The isolated instance, to which appellant refers, seems to have stemmed from appellant's persistence in unresponsive and evasive answers.

According to the appellant, the court also improperly permitted the introduction of evidence concerning past obligations, judgments and other debts, all unpaid. As heretofore observed, the intent to defraud is a necessary element of theft and appellant testified that he intended to pay for the merchandise. Certainly, testimony of his inability to make such payment because of his general financial position tends to negative the effect of appellant's denials of any criminal intention. (*People* v. *Zerillo*, 36 Cal.2d 222, 228 [223 P.2d 223]).

Appellant's final point concerns the court's instructions on the crime of grand theft, and the failure therein to advise the jury on all of the elements of theft by false pretenses. We have examined the charge, and the point is not tenable.

Appellant also argues that the court on its own motion should have given an instruction on the law of partnership, since that matter was vital to a proper consideration of the evidence. (*People* v. *Buffum*, 40 Cal.2d 709, 724 [256 P.2d 317].) The contention is without merit, since the victims did not rely on appellant's asserted partnership interest in Spectrum Electronics, but upon his representation that he was the owner thereof.

There has been no miscarriage of justice in this case. The appellant was fairly tried and justly convicted and no error is apparent in the record.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.