GRIFFIN, P. J.
 

 Defendant appeals from a judgment of conviction entered upon a jury verdict of guilty of grand theft. He was charged with and admitted a prior felony conviction of burglary at night with intent to commit theft in the state of Texas. He was sentenced to state prison.
 

 Shortly after 6 p.m. on January 11, 1959, defendant rented a 1958 G.M.C. half-ton pickup truck having a gray bottom and white top and a long three-quarter-ton bed from a truck rental service in Bakersfield. The truck was equipped with Goodrich tires. On the same night an employee of Rich-field Oil Company at its service yard 3 or 4 miles south of Bakersfield observed a late model half-ton G.M.C. pickup truck near the junk bin in the storage yard. He noticed that the truck was a light color on top and a dark color on the bottom and that it appeared to be loaded. The employee knew that the truck was unauthorized and reported what he had observed to the night watchman.
 

 An investigation revealed that a lock on the gate to the storage yard had been forced open and tracks were found
 
 *218
 
 in the area where the truck had been first observed. The tire tracks appeared to have been made by a vehicle making two trips to the yard and the tire impressions were made by tires similar in size, shape and design to those on the truck rented by defendant that evening. All trucks used in this yard by Richfield Oil Company have Goodyear tires. On January 12, 1959, a storekeeper for Richfield Oil Company investigated the equipment stored in the yard and estimated that about 3 tons of “thread protectors” were missing and the value of the missing equipment was estimated at $400 to $420. About 3 :30 p.m. on January 12, 1959, appellant, in the company of Roy Wilson, returned the truck he had rented the previous day to the truck rental service. When he returned the truck defendant stated that he had had a fiat tire on the rear and had changed it. At the time the truck was returned by defendant grease was found on the truck bed which had not been there when defendant received the truck.
 

 On the morning of January 13, 1959, defendant and Roy Wilson sold 5,060 pounds of “thread protectors” to a dealer in used equipment in Huntington Beach, California for a total price of $278.30. On February 10, 1959, the storekeeper for Richfield Oil Company identified the thread protectors previously sold to the Huntington Beach equipment dealer by defendant on January 13, 1959, as property of the Richfield Oil Company. This identification was based on the presence of Richfield's patented thread lubricant with which Richfield thread protectors were “doped” at the Richfield yard and by ■ the presence in the lubricant of lint which is blown into the junk bin of the Richfield yard from a cottonseed delinting mill located about 50 yards away. An expert criminologist compared samples of grease taken from thread protectors in the Richfield yard, grease taken from the bed of the truck which appellant rented and grease taken from thread protectors sold to the Huntington Beach equipment dealer by defendant, and testified that in his opinion all three samples were similar.
 

 A deputy sheriff testified that he questioned defendant on January 19 and defendant at that time denied renting a pickup truck in Bakersfield at any time and denied buying or selling thread protectors at any time in California. Upon being told that his driver’s license number matched that of a man who had rented a truck in Bakersfield on January 11, 1959, defendant admitted renting the truck and admitted that he had given a fictitious address when he rented it. After being shown checks payable to him and endorsed by him which
 
 *219
 
 contained statements that they were issued in payment for thread protectors, defendant admitted that he had sold thread protectors at the Huntington Beach equipment yard, but refused to state where he had obtained them. However, during a subsequent interview the next day, defendant stated that he had decided to change his mind and that he knew nothing about renting a truck or selling thread protectors in Huntington Beach.
 

 At his trial defendant testified that he had rented the truck to assist a friend, whose address he could not remember, in moving some furniture. He admitted selling the thread protectors in Huntington Beach on January 13, 1959, but stated that he had acquired them after they had been abandoned by their true owners at certain oil leases near Taft and Fillmore. Boy Wilson testified that he acquired the thread protectors sold by him on January 13 from a man named Herman Johnson who had indicated that these thread protectors were stolen from the Bichfield Bakersfield yard. Wilson admitted having been convicted of two prior felonies, and that he lived across the street from the defendant, and that they worked for the same company. However, Wilson denied being associated with defendant in any way concerning the purchase or sale of thread protectors. During the cross-examination of Wilson and the defendant numerous inconsistencies in their testimony were brought out.
 

 Defendant filed a purported notice of appeal from the judgment and requested this court to appoint an attorney to represent him on his appeal. Defendant and his attorney at the trial were requested to inform this court of possible meritorious grounds of appeal. A negative response was received from defendant’s trial counsel. This court then made an independent examination of the record and determined that it would not be of value to the court or helpful to the defendant to have appellate counsel appointed.
 
 (People
 
 v.
 
 Hyde,
 
 51 Cal.2d 152 [331 P.2d 42];
 
 People
 
 v.
 
 Marsh,
 
 170 Cal.App.2d 284 [338 P.2d 495].) The defendant was informed that his request for counsel had been denied and he was asked to file an opening brief or make such other showing as he might desire. Defendant filed his opening brief, the attorney general filed a respondent’s brief, and defendant filed a brief in reply thereto.
 

 The evidence is sufficient to support the conviction. Although the testimony of defendant and Wilson
 
 *220
 
 created a conflict in the evidence, it is not the function of the reviewing court to reweigh this evidence.
 

 “ ‘ [W]e must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict. ’ ”
 
 (People
 
 v.
 
 Newland,
 
 15 Cal.2d 678 [104 P.2d 778].)
 

 In his opening brief defendant urged as the sole ground of his appeal that the judgment of conviction for grand theft must be reversed in that the evidence indicates conclusively that there must have been several acts of petty theft rather than a single act of grand theft. Defendant contends that inasmuch as the thread protectors were carried away in a half-ton pickup truck and the protectors were worth, according to the testimony of the storekeeper for Richfield Oil Company, $132 to $140 per ton, necessarily the value of the stolen property carried away in each trip must have been less than $200. However, the evidence discloses that approximately three tons of thread protectors were taken during two trips; therefore a ton and a half of thread protectors must have been taken in each trip. A witness testified that a half-ton pickup truck, depending on the size of the bed, would carry about a ton and a half of the protectors piled up. The market value of a ton and a half of protectors was between $198 and $210. Furthermore, there was evidence that the truck had a flat tire, from which the jury could reasonably have inferred that the truck had been loaded with protectors beyond its capacity.
 

 Even if the evidence had shown conclusively, which it does not, that the value of the protectors taken in one trip was less than $200, it is undisputed that the total value of the protectors taken was in excess of $200, and there was evidence from which the jury could have reasonably concluded that the taking was a part of one over-all plan or scheme even though there was a series of transactions. The general test as to whether there are separate offenses or one offense is whether the evidence discloses one general intent or discloses separate and distinct intents. The particular facts and circumstances of each case determine this question. If there is but one intention, one general impulse, and one plan, even though there are a series of transactions, there is but one offense.
 
 (People
 
 v.
 
 Howes,
 
 99 Cal.App.2d 808, 818 [222 P.2d 969];
 
 People
 
 v.
 
 Lima,
 
 127 Cal.App.2d 29 [273 P.2d 268];
 
 People
 
 v.
 
 Robertson,
 
 167 Cal.App.2d 571 [334 P.2d 938].)
 

 
 *221
 
 In Ms reply brief defendant points out that the respondent’s brief was filed more than 30 days after the defendant’s opening brief was filed and urges that under rule 37, Rules on Appeal, the judgment must be reversed because the respondent is in default. This contention is without merit. Neither defendant’s opening brief nor the record on appeal contains proof that the defendant’s opening brief was served on the attorney general as required by rule 37. An examination of rule 37 of the Rules on Appeal reveals that no penalty is provided for late filing of the respondent’s brief. Defendant has made no showing that the delay deprived defendant of due process of law or affected the merits of his appeal.
 
 (People
 
 v.
 
 Harrison,
 
 129 Cal.App.2d 197, 203 [276 P.2d 188].) Furthermore, this court is required in this case to make an independent examination of the record and, as heretofore indicated, our examination of the record reveals that no grounds for reversal of the judgment of conviction exist in this ease and no prejudicial error resulted.
 
 (People
 
 v.
 
 Hyde, supra,
 
 51 Cal.2d 152.)
 

 Judgment affirmed.
 

 Shepard, J., and Coughlin, J., concurred.