[No. F044894. Fifth Dist. Dec. 7, 2004.]

In re EDWARD G., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
EDWARD G., Defendant and Appellant.

**COUNSEL**

Veronica A. Bonetti, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, and Charles A. French, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**WISEMAN, J.**—Edward G., a minor, was found by the juvenile court in count 1 to have discharged a firearm from a vehicle at a person outside the vehicle, and in count 2 to have committed an assault with a firearm. We hold that the true finding on count 2 must be reversed because it is an offense necessarily included in the offense charged in count 1. Further, the true finding on count 2 cannot be upheld on the ground that, even though it is a lesser-included offense, it was supported by facts independent of those supporting count 1. The juvenile court implicitly found that the two counts were based on one act.

## PROCEDURAL AND FACTUAL HISTORIES

The district attorney filed a juvenile wardship petition alleging that on December 18, 2003, when he was 14 years old, the minor committed two crimes: 1) discharging a firearm from a vehicle at Leticia Parra, who was not inside the vehicle, in violation of Penal Code section 12034, subdivision (c);[1] and 2) assaulting Leticia Parra with a firearm, in violation of section 245, subdivision (a)(2).

The juvenile court held a contested adjudication hearing. Another minor, Edgar A., was tried in the same proceeding. The victim testified that she was standing with her cousin in front of her house in Del Rey on the night of the shooting when she suddenly felt the pain of what turned out to be birdshot hitting her arm and shoulder. Then she turned and saw a pickup truck she recognized as Edgar's, saw a flash in the passenger window, and heard a second shot. Three months earlier, Edgar had attended a party at Parra's house, and another adult had asked him to leave.

Edgar testified at the adjudication hearing that he and a third boy drove from Sanger to Del Rey with Edward. He said Edward proposed going there because both Edward and Edgar "had problems" with people who lived there. Edgar testified that he agreed to go because he was "mad," but that he did not know about the gun and did not know of any plan to shoot anyone. He said he was surprised when Edward rolled down the window and fired two shots as they drove by the victim's house.

The three boys returned to Sanger and hid the truck in a garage. Edgar was questioned that night on the basis of the victim's identification of his truck. He identified Edward, in a photograph, as the shooter.

The court found the allegations against both minors true beyond a reasonable doubt. It concluded that count 2 was not a lesser-included offense of count 1 and imposed dispositions on Edward for both charges. For count 1, it committed him to the California Youth Authority (CYA) for a maximum period of seven years and imposed a restitution fine of $200 pursuant to Welfare and Institutions Code section 730.6. For count 2, the court imposed a maximum four-year commitment to CYA and a second $200 restitution fine and stayed them pursuant to section 654.

---

[1] Subsequent statutory references are to the Penal Code unless stated otherwise.

## *DISCUSSION*

### I.  *Lesser-included offense*

█  Defendant contends that the true finding on count 2 must be reversed because assault with a firearm is a lesser, necessarily included offense of discharging a firearm from a vehicle at a person outside the vehicle. "In California, a single act or course of conduct by a defendant can lead to convictions 'of *any number* of the offenses charged.' [Citations.] But a judicially created exception to this rule prohibits multiple convictions based on necessarily included offenses." (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034 [16 Cal.Rptr.3d 902, 94 P.3d 1098].)

█  Courts apply two tests in determining whether one offense is necessarily included in another. Under the statutory elements test, one offense is included in another if all the statutory elements of the first are included among those of the second. Under the accusatory pleading test, one offense is included in another if the facts actually alleged in the accusatory pleading in support of the second offense include all the elements of the first. (*People v. Birks* (1998) 19 Cal.4th 108, 117 [77 Cal.Rptr.2d 848, 960 P.2d 1073].) By raising the issue and then declining to decide it, our Supreme Court recently cast doubt on using the accusatory pleading test as a means of determining whether multiple convictions are appropriate. (*People v. Montoya, supra,* 33 Cal.4th at pp. 1035–1036.) As will be seen, we hold that multiple convictions are barred here by the statutory elements test, so we need not consider the accusatory pleading test.

Section 12034, subdivision (c), provides as follows: "Any person who willfully and maliciously discharges a firearm from a motor vehicle at another person other than an occupant of a motor vehicle is guilty of a felony punishable by imprisonment in state prison for three, five, or seven years."

Section 245, subdivision (a)(2), provides: "Any person who commits an assault upon the person of another with a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not less than six months and not exceeding one year, or by both a fine not exceeding ten thousand dollars ($10,000) and imprisonment."

█  Assault is defined as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.)

■ These provisions show that a violation of section 245, subdivision (a)(2), is necessarily included in a violation of section 12034, subdivision (c). It is not possible to "willfully and maliciously [discharge] a firearm" "at another person" (§ 12034, subd. (c)) without attempting "to commit a violent injury on the person of another" "with a firearm" while having a "present ability" to do so (§§ 240, 245, subd. (a)(2)).

Only the "present ability" element of assault, which the People have not mentioned, gives us pause. Does a person who "discharges a firearm from a motor vehicle at another person" (§ 12034, subd. (c)) necessarily have "a present ability . . . to . . . injur[e]" that other person (§ 240)? What if, for instance, when the perpetrator discharges the firearm at the victim, the victim happens to be standing behind bulletproof glass?

This question has already been decided. In *People v. Valdez* (1985) 175 Cal.App.3d 103 [220 Cal.Rptr. 538], the defendant was convicted of assault with a firearm after he fired three shots at a gas station cashier. The cashier was behind a bulletproof window, which saved him. (*Id.* at pp. 106–107.) The defendant argued on appeal that the present ability element of assault was not established because he could not have hit the victim through the bulletproof glass. (*Id.* at p. 108.)

■ The *Valdez* court framed the issue this way: "Is the 'present ability' element of the crime of assault satisfied where some outside circumstance unknown to the defendant makes it impossible for the chosen means of attack to actually inflict injury on the victim?" (*People v. Valdez, supra,* 175 Cal.App.3d at p. 108.) Observing that this was an issue of first impression in California and one which "has provoked considerable academic interest over the years," the court held that impossibility caused by "external circumstances" does not negate the present ability element. (*Id.* at pp. 108, 112.) An ability, the court explained, is not the same as a possibility. An ability is "a personal attribute—what a given individual has the capacity to do in contrast with those who lack this quality—not an environmental factor." (*Id.* at p. 111.) Therefore, the present ability element does not require an absence of external obstacles and does not require that the infliction of injury be physically possible. It requires only that the defendant "have maneuvered himself into such a location and equipped himself with sufficient means that he appears to be able to strike immediately at his intended victim." (*Id.* at p. 112.)

■ The court further justified this result by explaining the policy justification for the present ability element of assault: "The real function of this 'present ability' element in common law assault as incorporated in the California statute is to require the perpetrator to have gone beyond the

minimal steps involved in an attempt. That is, he must have come closer to inflicting injury than he would have to in order to satisfy the elements of an attempt. . . . [¶] . . . The policy justification is apparent. When someone has gone [so] far [as to satisfy the present ability element as defined by the court] he is a greater and more imminent threat to his victim and the public peace than if he is at an earlier stage of an attempted crime." (*People v. Valdez, supra*, 175 Cal.App.3d at p. 112.)

Because the goal is to single out those who go beyond an attempt (but still do not commit a completed crime), it would make no sense to excuse those who do this but are thwarted by an external circumstance. (*People v. Valdez, supra*, 175 Cal.App.3d at p. 112.)

The court distinguished cases holding that trying to shoot someone with an unloaded gun is not an assault. "In those situations, the defendant has simply failed to equip himself with the personal means to inflict serious injury even if he thought he had." (*People v. Valdez, supra*, at p. 112.)

█ We find the reasoning of *Valdez* persuasive. We conclude that it follows from *Valdez* that a person who violates section 12034, subdivision (c), necessarily has the present ability to commit a violent injury on the person of another. A violator of section 12034, subdivision (c), has "willfully and maliciously discharge[d] a firearm . . . at another person . . . ." If a perpetrator is in a position to fire "at" a person, his or her gun is loaded, and he or she actually discharges it at the person, then the perpetrator necessarily has "maneuvered himself into such a location and equipped himself with sufficient means that he appears to be able to strike immediately at his intended victim." (*People v. Valdez, supra*, 175 Cal.App.3d at p. 112.)

The People argue that section 245, subdivision (a)(2), is not necessarily included in section 12034, subdivision (c), because the two crimes have different mental-state elements. Quoting CALJIC No. 9.00, the People argue that assault requires that the defendant "was aware of facts that would lead a reasonable person to realize that as a direct, natural and probable result of [the defendant's] act that physical force would be applied to another person . . . ." According to CALJIC No. 9.05, by contrast, the drive-by shooting crime requires that the defendant discharge a firearm at a person willfully and maliciously. The People argue that this shows it is possible to violate section 12034, subdivision (c), without committing an assault with a firearm.

█ This argument is meritless. A defendant who willfully and maliciously discharges a firearm at another is necessarily aware of facts that would lead a reasonable person to realize that the application of physical force to another is a natural and probable result of his or her action. Specifically, such a

defendant is aware of the fact that he or she is discharging a firearm at another. A reasonable person would realize that doing this will naturally and probably result in physical force, in the form of bullets, being applied to another.

The People also argue that even if the one offense is necessarily included in the other, two true findings were appropriate either because two shots were fired or because there were two victims. Uncontroverted testimony established that the minor fired two shots and that at least two people were standing in the yard the minor fired into. Therefore, the People argue, two factually independent crimes were proved.

■ We disagree. With respect to the People's two-shots theory, the key question is whether the two shots constituted a single indivisible act. In *People v. Greer* (1947) 30 Cal.2d 589 [184 P.2d 512], overruled on other grounds by *People v. Fields* (1996) 13 Cal.4th 289 [52 Cal.Rptr.2d 282, 914 P.2d 832], Justice Traynor stated for the court that although one of the offenses in question was necessarily included in another, and those two in a third, the defendant could still "be convicted of all three offenses if separate acts served as the basis of each count." The court further held that "the question whether the acts are the same is a question for the jury, unless as a matter of law the acts are not divisible." (*People v. Greer, supra,* at pp. 599–600.)

■ Here, the finder of fact found that the two true findings were based on the same act. When the court stayed the sentence for count 2 pursuant to section 654, it implicitly found that the two counts were based on the same act. Section 654 forbids multiple punishments for "[a]n act or omission." The question of whether multiple offenses are based on the same act is answered in the same way regardless of whether the court is considering a stay under section 654 or deciding whether a second conviction is permissible for a lesser-included offense. In both contexts, the court decides whether the defendant had one general intention or two or more separate and distinct intentions. (*People v. Britt* (2004) 32 Cal.4th 944, 951–952 [12 Cal.Rptr.3d 66, 87 P.3d 812] [§ 654 context]; *People v. James* (1960) 179 Cal.App.2d 216, 220 [3 Cal.Rptr. 648] [multiple-conviction context].) Here the court implicitly found only one act or omission, so we cannot conclude that the second shot established a second offense.

We also reject the People's two-victims theory. The petition specified Leticia Parra as the victim in both counts. Because the petition is what the court found true, we cannot conclude that the lesser offense is based on an assault on the cousin.

Finally, the People make the following argument: In *In re Sergio R.* (1991) 228 Cal.App.3d 588 [279 Cal.Rptr. 149], as here, a juvenile wardship petition

was sustained alleging that the minor violated section 245, subdivision (a)(2), and section 12034, subdivision (c). (*In re Sergio R., supra,* at p. 594.) The Court of Appeal held that the minor could be *punished* for both crimes because the two charges pertained to different victims. (*Id.* at p. 598.) According to the People, this holding implies that if there had not been multiple victims, the minor could not receive multiple punishments, which in turn implies that if there was only one victim, the court *could* sustain multiple *counts* because "[t]here would be no need to be concerned about dual punishment . . . if dual convictions were prohibited . . . ."

We do not follow the People's logic. *Sergio R.* simply holds that where there are multiple victims, there can be separate punishments for the two offenses. This implies nothing about whether two true findings would be permissible if there was only one victim.

Inexplicably, the People also rely on *People v. Masters* (1987) 195 Cal.App.3d 1124, 1127–1130 [241 Cal.Rptr. 511] in support of this argument. In *Masters* the court rejected a defendant's claim that section 654 prohibited dual punishments for violations of section 245, subdivision (a)(2), and section 246 even though there were multiple victims. The court's discussion of this issue has no bearing at all on whether multiple convictions are possible for violations of section 245, subdivision (a)(2), and section 12034, subdivision (c), when there is only one victim.

■ We hold that the true finding on count 2 must be reversed because a violation of section 245, subdivision (a)(2), is necessarily included in a violation of section 12034, subdivision (c), based on the same act and the same victim.

## II. *Restitution fines*

Defendant argues that the court erred in imposing separate restitution fines for the two counts because Welfare and Institutions Code section 730.6 authorizes only one restitution fine per case. It is unnecessary for us to reach this issue because our holding reversing the true finding as to count 2 necessitates vacating the disposition imposed on that count in any event.

## DISPOSITION

The true finding on count 2 is reversed and the disposition imposed on that count is vacated. The judgment is affirmed in all other respects.

Vartabedian, Acting P. J., and Harris, J., concurred.