Filed 6/23/15  In re Kiley B. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re KILEY B., a Person Coming Under the Juvenile Court Law. | D065405 |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>KILEY B.,<br><br>     Defendant and Appellant. | (Super. Ct. No. J234552) |

APPEAL from a judgment of the Superior Court of San Diego County, Gibson Lee and Robert J. Trentacosta, Judges.  Affirmed in part, reversed in part and remanded with directions.

Johanna S. Schiavoni, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Quisteen S. Shum, Deputy Attorneys General, for Plaintiff and Respondent.

Kiley B. appeals from the juvenile court's true findings sustaining a delinquency petition on three counts: (1) attempting to obstruct or resist an officer through threats or violence, or using force or violence to resist an officer (Pen. Code, § 69),[1] a felony; (2) battery on an officer (§ 243, subd. (b)), a misdemeanor; and (3) resisting, delaying or obstructing an officer (§ 148, subd. (a)(1)), a misdemeanor. Kiley contends there was insufficient evidence to support that the officer she resisted was lawfully performing his duties at the time. She also contends that in juvenile cases (unlike in adult cases) the accusatory pleading test as well as the elements test should be used to determine lesser included offenses for the multiple conviction bar and, as a result, her section 148, subdivision (a)(1) (hereafter section 148(a)(1)) true finding cannot be sustained because the offense is a lesser included offense of section 69. We disagree and reject Kiley's contentions on these points.

Finally, Kiley contends the court did not make an express finding whether to treat the section 69 obstruction count as a felony or a misdemeanor as required by Welfare and Institutions Code section 702. We agree and remand for the juvenile court to make the requisite express declaration.

---

1      All further statutory references are to the Penal Code unless stated otherwise.

## FACTUAL AND PROCEDURAL BACKGROUND

Late in the evening on November 22, 2013, Deputy Marcus Levine responded to a call regarding a disturbance—noise from a screaming female—in a residential neighborhood. When he arrived at the scene, in full uniform and a marked patrol vehicle, he observed 50 or more juveniles in the area walking toward their cars, as if they were leaving a party. The only noise Deputy Levine heard was Kiley, screaming on the street. Exiting his vehicle, he saw Kiley standing on the driver's side of a parked car, yelling at two girls inside of the car; he observed all of them to be juveniles or youthful-looking in age. Kiley was arguing with the girls, demanding the return of her phone.

Deputy Levine approached this group and asked "what's going on" to figure out what had led to the screaming and to investigate the reported disturbance. Deputy Levine was within arm's reach of Kiley, could smell alcohol emanating from her, and could see she was crying. Kiley did not respond, and began to walk away; Deputy Levine asked her to come back and told her to stop. Kiley did not stop. He asked Kiley to stop again and said, "Don't make me chase after you," but she kept walking. At that point, he grabbed Kiley's left wrist to detain her for further investigation. As he escorted her to the patrol vehicle, Kiley was pulling away. She repeatedly cursed, "Get the fuck off me," and "Fuck you, Nigga." At the patrol vehicle, Kiley refused to turn around so that Deputy Levine could put her in handcuffs, kept pulling away and, finally, kicked his right shin. Deputy Levine testified that Kiley's kick was not incidental contact but, rather, was intentional to get out of his grasp ("she actually lifted up her left leg" like "you would kick a ball").

3

Following the kick, Deputy Levine took Kiley down to the ground, applied enough pressure to her back so that he could handcuff her and she would remain on the ground, but avoided injuring her. Kiley physically resisted and cursed, "Fuck you, get off me," throughout this contact. Deputy Levine put Kiley in his patrol vehicle and read her her *Miranda* rights. Kiley was falling in and out of sleep, and she told Deputy Levine her behavior that night was due to being "faded" (intoxicated). When he asked why she had kicked him, Kiley denied doing so. Deputy Levine was in pain for several hours, but did not require medical assistance.

At the conclusion of witness examination at the adjudication hearing, the court (Judge Gibson Lee) stated that defendant had the opportunity to address "whether or not the People have met its burden as to all of the counts: one, the [section] 69; two, the [section] 243[, subdivision ](b) as a misdemeanor and the [section] 148 as a misdemeanor." After closing arguments, the court found the allegations of the petition to be true and sustained the petition on all three counts. The court's minute order stated: "THE COURT FINDS: After considering evidence and testimony, the petition is sustained and the minor is in violation of Count 1, [section ]69, a felony; Count 2, [section ]243[, subdivision ](b), a misdemeanor; and Count 3, [section ]148(a)(1), a misdemeanor as proven beyond a reasonable doubt."

The probation report submitted at the subsequent disposition hearing stated Kiley had sustained a true finding for violating section 69, "a Felony," and recounted the facts of the incident, including her excessive drinking that night, for none of which she had any memory. During the hearing, the People reiterated that Kiley had been "true found on a

4

felony of [section] 69" based on a violent struggle with a police officer and highlighted Kiley's history of substance abuse as reported by her probation officers. After considering the evidence and counsel's comments, the court (Judge Robert Trentacosta) set an accelerated review hearing for three months out (rather than one year as proposed by the People), and ordered Kiley to "not use force, threats or violence upon any other person."

DISCUSSION

I

*Sufficiency of the Evidence That Officer Was Lawfully Performing Duties*

Kiley contends there was insufficient evidence to support that Deputy Levine was lawfully performing a duty at the time she resisted him. She asserts Deputy Levine was not justified in grabbing her wrist, and her detention was converted into a "de facto arrest" requiring probable cause.

The standard of proof in juvenile proceedings involving criminal acts is the same as the standard in adult criminal trials. (*In re Babak S.* (1993) 18 Cal.App.4th 1077, 1088.) On appeal, we determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*In re Manuel G.* (1997) 16 Cal.4th 805, 822 (*Manuel G.*).) If the court's findings are supported by substantial evidence, we are bound to give due deference to the findings and cannot retry the case ourselves. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) It is the

5

exclusive function of the trial court to assess the credibility of witnesses and draw reasonable inferences from the evidence. (*People v. Barnes* (1986) 42 Cal.3d 284, 303; *People v. Hale* (1999) 75 Cal.App.4th 94, 105.)

In order for Deputy Levine to be lawfully performing his duties as required to sustain the charged counts, it was necessary to prove that he had a reasonable suspicion to detain Kiley. (See *People v. Rodriguez* (2012) 207 Cal.App.4th 1540, 1543.) "[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." (*United States v. Sokolow* (1989) 490 U.S. 1, 7.) The officer must have a reasonable, articulable suspicion the detainee has been, currently is, or is about to be engaged in criminal activity. (*Terry v. Ohio* (1968) 392 U.S. 1, 21; see *In re Tony C.* (1978) 21 Cal.3d 888, 893 (*Tony C.*).) The officer must "point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231.)

"The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal—to 'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.' " (*Tony C., supra*, 21 Cal.3d at p. 894.) However, "an investigative stop or detention predicated

on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith." (*Id.* at p. 893.)

Here, Deputy Levine had a reasonable suspicion to detain Kiley and, hence, the record supports that he was lawfully performing a duty at the time of her resistance. Deputy Levine was called on to investigate a reported late night disturbance of a screaming female. (See § 415 [offense of disturbing the peace].) Because he did not know what had led to the screaming, it was appropriate to speak to the only female he identified on the street to be screaming. Moreover, Deputy Levine described specific facts to support that Kiley may be publically intoxicated (and underage), suggesting she could pose a danger to herself and others, particularly if she was intending to drive, and she could be violating the law. He had observed young people dispersing from a house party toward their cars and a belligerent Kiley, smelling like alcohol and arguing with two other young people over personal property. Under these circumstances, Deputy Levine had reasonable suspicion to detain Kiley for further investigation. Indeed, he would have been derelict in his duties had he ignored the situation.

Kiley's assertion that the deputy's conduct of grabbing her wrist converted the detention into a de facto arrest is unavailing. " '[T]here is no hard and fast line to distinguish permissible investigative detentions from impermissible de facto arrests. Instead, the issue is decided on the facts of each case, with focus on whether the police diligently pursued a means of investigation reasonably designed to dispel or confirm their suspicions quickly, using the least intrusive means reasonably available under the circumstances.' " (*People v. Celis* (2004) 33 Cal.4th 667, 674-675.) Thus, in *Celis*, a

7

police intrusion of "stopping a suspect at gunpoint, handcuffing him, and making him sit on the ground for a short period" did not convert a detention into an arrest, due in part to the concern that he would flee. (*Id.* at pp. 675-676; see *Haynie v. County of Los Angeles* (9th Cir. 2003) 339 F.3d 1071, 1077 [use of handcuffs reasonable during detention when the suspect refused to obey the officer's commands].)

Deputy Levine used the least intrusive means reasonably available under the circumstances to conduct his investigation. Despite his repeated directives for Kiley to "stop" and warning that she would be chased, she failed to comply. It was reasonable for Deputy Levine to physically prevent Kiley from escaping by holding her wrist. Even as he moved her a few steps to his patrol vehicle, Kiley resisted, cursed him, and grew more agitated. Before Deputy Levine could begin to have a coherent conversation with her and attempt to investigate the situation, she was pulling away and deliberately kicked him. In response to her aggression, his actions to subdue her so they could talk were reasonable.

Deputy Levine had a reasonable suspicion to detain Kiley for further investigation, and he acted reasonably in response to her resistance. There was substantial evidence to support that he was lawfully performing his duties.

II

*Accusatory Pleading Test Does Not Apply in Juvenile Cases for Multiple Conviction Bar*

Kiley contends her section 148(a)(1) count should be stricken because it is a lesser included offense of section 69 under the accusatory pleading test. Kiley does not dispute that for purposes of the multiple conviction bar, the California Supreme Court has held we use only the elements test, and under this test, section 148(a)(1) is not a lesser

8

included offense of section 69. Kiley argues, however, that *juvenile* adjudications should be treated differently.

A single act or course of conduct by a defendant can lead to multiple convictions of any number of the offenses charged. (§ 954.) A judicially created exception to the general rule permitting multiple convictions is when an offense is necessarily included in another offense. (*People v. Reed* (2006) 38 Cal.4th 1224, 1227.) In deciding whether multiple convictions are proper, a court should consider only the elements test. (*Id.* at p. 1229.) Under this test, if the elements of the greater offense include all of the elements of the lesser offense, the latter is necessarily included in the former. (*Id.* at p. 1227.) In *Reed*, our Supreme Court acknowledged that the alternative "accusatory pleading test" had at times been used to analyze multiple convictions, but it found that looking to the pleading's factual allegations " 'makes no sense' " when the greater and lesser offenses are both charged and therefore a defendant can adequately prepare a defense. (*Id.* at pp. 1229-1230.) The court concluded:

> "[W]e believe it is logically consistent to apply the accusatory pleading test when it is logical to do so (to ensure adequate notice) but not when it is illogical to do so (when doing so merely defeats the legislative policy permitting multiple conviction). Our conclusion results in a straightforward overall rule: Courts should consider the statutory elements and accusatory pleading in deciding whether a defendant received notice, and therefore may be convicted, of an *uncharged* crime, but only the statutory elements in deciding whether a defendant may be convicted of multiple *charged* crimes." (*People v. Reed, supra*, 38 Cal.4th at p. 1231.)

In *People v. Smith* (2013) 57 Cal.4th 232, 240, our Supreme Court held that section 148(a)(1) is not a lesser included offense of section 69 based on the elements test.

9

"Section 69 prohibits two distinct types of activity—threats and violent conduct—when *either* activity constitutes an attempt 'to deter or prevent an executive officer from performing any duty imposed upon such officer by law.' " (*People v. Hines* (1997) 15 Cal.4th 997, 1061-1062; *Manuel G., supra,* 16 Cal.4th at p. 814.) "Section 148(a)(1) is similar to the second way of violating section 69 but is clearly different from the first way of violating section 69."[2] (*Smith*, at p. 241.) The first way of violating section 69 does not require the "actual use of force or violence"; it can be violated by threats to deter an officer's performance of a duty at some time in the future. (*Smith*, at p. 240.)

Kiley contends we should not apply *Reed* in the juvenile context, and we should instead use both the elements and the accusatory pleading test to analyze multiple convictions. However, she only cites cases predating *Reed,* which do not necessarily support her position. (E.g., *In re Edward G.* (2004) 124 Cal.App.4th 962, 967 [relying on statutory elements test because "our Supreme Court recently cast doubt on using the accusatory pleading test as a means of determining whether multiple convictions are appropriate"].)

To support her position, Kiley contends prosecutors are incentivized to over-charge offenses in juvenile cases, and implies juvenile courts will make true findings on all charged offenses without properly considering whether there is sufficient proof to support each offense. We reject these unsupported contentions. Under binding

---

[2] Section 148(a)(1) provides in part: "Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician . . . in the discharge or attempt to discharge any duty of his or her office or employment . . . shall be punished . . . ."

precedent, the petition against Kiley could be sustained on both sections 148(a)(1) and 69, and we presume courts properly perform their duties and understand the law.

Kiley further contends the court erred by not considering proof at trial in determining whether section 148(a)(1)'s elements overlapped with section 69, but identifying a lesser included offense does not include considering the evidence adduced at trial—it is based upon the definitions of both offenses. (*People v. Ortega* (1998) 19 Cal.4th 686, 698.)

Finally, Kiley has cited no authority or provided any persuasive rationale to support her claims that equal protection and due process require treating juvenile adjudications differently than adult convictions for purposes of the multiple conviction bar. There is no basis to strike the true finding on the section 148(a)(1) offense.

III

*Remand Is Required To Determine Whether Section 69*
*Should Be a Felony or Misdemeanor*

Kiley contends the juvenile court erred in failing to declare on the record whether her offense of obstructing or resisting an executive officer under section 69 was a felony or a misdemeanor, as required by Welfare and Institutions Code section 702 and *In re Manzy W.* (1997) 14 Cal.4th 1199 (*Manzy W.*), and there was insufficient evidence the court was aware of its discretion to elect a misdemeanor classification. The parties agree that section 69 may be punishable as either a felony or a misdemeanor.

"If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, *the court shall declare*

11

*the offense to be a misdemeanor or felony*." (Welf. & Inst. Code, § 702, italics added.) An express declaration is mandatory. (*Manzy W., supra*, 14 Cal.4th at p. 1204; see Cal. Rules of Court, rule 5.780(e)(5).) In addition to serving an administrative purpose, the requirement that the juvenile court declare whether a " 'wobbler' " offense is a misdemeanor or felony serves the purpose of ensuring that the juvenile court is aware of, and actually exercises, its discretion. (*Manzy W.*, at p. 1207.)

The fact that a Welfare and Institutions Code section 602 petition sustained by the juvenile court describes a charged offense as a felony does not by itself indicate compliance with the court's statutory obligation to explicitly declare whether the offense is a felony or misdemeanor. (*In re Kenneth H.* (1983) 33 Cal.3d 616, 619-620.) Likewise, juvenile court minutes containing a notation that the court found the minor committed a charged felony offense does not establish compliance with the court's statutory obligation to explicitly declare whether the offense is a felony or misdemeanor if the hearing transcript does not support the notation. (*In re Dennis C.* (1980) 104 Cal.App.3d 16, 23.)

However, failure to make an express declaration does not result in " 'automatic' " remand. (*Manzy W., supra*, 14 Cal.4th at p. 1209.) The record in a given case may show that the juvenile court, despite its failure to comply with the statute, was aware of its duty and exercised its discretion to determine the felony or misdemeanor nature of a wobbler. (*Ibid.*) "In such case, when remand would be merely redundant, failure to comply with the statute would amount to harmless error." (*Ibid.*) "The key issue is whether the record

12

as a whole establishes that the juvenile court was aware of its discretion to treat the offense as a misdemeanor and to state a misdemeanor-length confinement limit." (*Ibid.*)

Here, the juvenile court did not expressly state on the record that section 69 could have been punishable as either a felony or a misdemeanor, and the record on a whole does not clearly reflect the court's awareness of its discretion in this regard.  It is not sufficient that all involved parties were aware Kiley had been charged with a felony and the court sustained the petition as charged.  In addition, although the court considered the offense to be serious and the prosecutor emphasized the violent nature of it, no one commented that section 69 was capable of being classified as a misdemeanor.  Accordingly, the failure to comply with Welfare and Institutions Code section 702 was not harmless and remand is required.  In remanding, we are not suggesting how the court should exercise its discretion, only that it expressly declare it has determined whether the offense should be treated as a felony or a misdemeanor.

## DISPOSITION

The matter is remanded for an express declaration whether count 1 is a felony or misdemeanor.  In all other respects, the judgment is affirmed.

HALLER, J.

WE CONCUR:


McCONNELL, P. J.


BENKE, J.