[Crim. No. 44029. Second Dist., Div. Six. July 20, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
MARVIN B. DANIEL, Defendant and Appellant.

## Counsel

Ann J. Howell, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Daniel J. Kremer, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller and W. Scott Thorpe, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**ABBE, J.**—Appellant was convicted by a jury of three counts of grand theft (Pen. Code, § 487, subd. 1) and five counts of issuing checks with insuffi-

cient funds (Pen. Code, § 476a). On one grand theft count (count I) the jury found true the enhancement allegation that the amount of the theft exceeded $25,000. (Pen. Code, § 12022.6.) The jury found not to be true the enhancement allegation on the grand theft charge contained in count III. During trial appellant's motion for acquittal was granted on two other grand theft counts. After denial of appellant's motion for new trial, he was sentenced to the state prison on count I for the middle term of two years, plus one year for the section 12022.6 enhancement,[1] a total of three years. Sentences of two years on each of the other counts were ordered to be served concurrently.

### Contentions on Appeal

Appellant challenges his convictions on counts I and III on the grounds the court committed error in failing to give *sua sponte* CALJIC instruction No. 17.01 requiring jury unanimity on what act or acts constitute the offense. Appellant challenges his conviction of counts I and IV and the jury's finding that the loss on count I exceeded $25,000, on grounds of insufficiency of the evidence. The appellant also challenges his convictions on counts I, III and IV on the ground that it was error for the court to give instructions after deliberations had begun and to refuse to allow additional argument.

In count I appellant was charged with grand theft from Pacific Buyers Club, Inc., doing business as International Consumers Club (hereafter ICC), between July 2, 1978, and December 3, 1978, with the value of the property taken exceeding $25,000 within the meaning of section 12022.6, subdivision (a). Count III charged the appellant with grand theft from Luralee Williams and James Pereira on August 25, 1978, with the property value exceeding $25,000, within the meaning of section 12022.6, subdivision (a). Count IV charged appellant with grand theft from Michael Lowery on November 14, 1978.

### Facts

### Count I

Appellant was the major shareholder and president of the board of directors (Board) of ICC, which he formed and incorporated in 1977. He was the only paid member of the Board and the only member involved in the day-to-day operation of ICC. Appellant paid nothing for his nearly 1 million shares, but the holders of the other 1,800 shares paid various sums up to

---

[1]All further references are to the Penal Code unless otherwise specified.

$150 per share. None of the shareholders ever received any return on their shares. ICC was set up as a membership discount operation which, during the relevant time period, sold groceries to members at one location and had a second office-type location where members could order furniture and appliances at a discount.

In June of 1978, ICC began having financial problems. Checks written on the sole bank account began to be dishonored and a major grocery supplier refused to make further deliveries. In early July 1978, appellant purchased in his own name an existing grocery business which had a supplier, Mor-Mac, using funds from the ICC account. Appellant paid $14,000 down, $6,000 through escrow and agreed to pay $1,000 per week up to a total of $91,000. Six payments of $1,000 were subsequently made. The appellant informed the Board of the purchase in late July. There was no vote of the Board to authorize the purchase either before or after it occurred.

After purchasing Mor-Mac appellant changed its name to Daniel Market (hereafter Market) and had three checkbooks issued on the one existing ICC account for use by the Market. All bank records for this account were sent to appellant's home rather than to the ICC offices. Deposits were made into the account from both ICC and Market by appellant.

Deposits from ICC were prepared by appellant's wife and deposits from Market were prepared by a bookkeeper working at appellant's direction. Deposits from the Market totaled $4,500 per day in July and August 1978. After August 1978, the deposits became much smaller.

Beginning in November 1978 appellant directed the bookkeeper to give him all cash receipts from Market and deposit only the checks. Shortly thereafter appellant instructed the bookkeeper to prepare a check to appellant daily in the total sum of the day's deposit which resulted in a zero net increase to the account. Creditors began complaining about not getting paid or having checks returned for insufficient funds and fewer vendors would sell supplies to the store. In late November appellant held a large sale at both ICC and Market at which goods were sold below cost.

During the July to December 1978 period, appellant, or his bookkeeper at his direction, paid for the purchase of the Market, for the rent on the Market, and the payments on loans made to appellant as an individual from the account. Market's employees, including appellant's son-in-law, were paid from this account. Testimony at trial indicated that during this same period appellant continued to sell "lifetime" or "unexpiring" memberships in ICC at various prices, and to take prepaid orders for goods which were never delivered.

Appellant admitted that he closed both Market and ICC in early December 1978, destroyed all the business and banking records for both Market and ICC, and unplugged the refrigeration units in Market resulting in $10,000 worth of ruined merchandise. In the last four months in business, defendant wrote checks totaling over $50,000 in insufficient funds. He thereupon left California and traveled under an assumed name.

FACTS

*Count III*

The testimony introduced at trial relating to count III involved the giving by appellant of two separate promissory notes secured by trust deeds on a single piece of property. Luralee Williams testified she gave appellant $24,000 secured by a promissory note and what appellant stated was a second trust deed on the property. Williams testified that appellant told her the purpose of the money was to allow him to fix up a house he had purchased so it could be resold quickly. Appellant agreed to pay $200 per month interest only until August 25, 1980, when the principal would be paid in a lump sum or on sale, if the house was sold sooner. Mrs. Williams believed from what appellant told her that the house was purchased just to fix up and resell but it was, in fact, appellant's residence. Mrs. Williams testified that this occurred on August 25, 1977. She received $200 per month from appellant by check from the ICC account until November 1978 when the check for that month was returned marked "insufficient funds." Mrs. Williams received nothing other than these payments. She had never recorded her trust deed.

Mr. Pereira testified that, in response to a newspaper advertisement, he contacted the appellant in late 1977. Mr. Pereira was informed by appellant that he wished to borrow $24,000, secured by a note and second deed of trust on some real estate. In fact, it was the same property involved in the Williams' transaction. He told Pereira that the only existing interest in the property was a first trust deed held by a Mr. Lepper. Pereira gave appellant $24,000 in December 1977 and received the note and deed of trust. In September 1978 Pereira recorded his trust deed. Pursuant to the terms of the note, appellant paid Pereira $200 per month as interest only for 11 months through November 1978. The check sent for December 1978 was returned marked "insufficient funds." Pereira received no further principal or interest payments and he foreclosed on his deed of trust after purchasing the first trust deed from its holder and expending various sums for taxes and repairs. He testified his net loss was between $7,000 and $8,000. The appellant testified he told Pereira of Mrs. Williams' deed of trust prior to receiving the loan.

## FACTS

### Count IV

Michael Lowery testified that he had purchased a lifetime membership in ICC in 1978. As a member, in November 1978 he went to Daniel Market and ordered a refrigerator from appellant. He paid appellant by check in the amount of $681.94 which appellant cashed. Appellant represented that it would take four to six weeks for the refrigerator to arrive. Mr. Lowery never received the refrigerator nor the return of his money. Mr. Lowery stated his later investigation indicated that appellant had ordered a refrigerator from a supplier but that it was paid for by an "insufficient funds" check and supplier refused to deliver it.

### CONTENTIONS—JURY INSTRUCTIONS

Appellant contends that the failure of the trial court to instruct the jury *sua sponte* in accordance with CALJIC No. 17.01 to the effect that the jury must unanimously agree on the act or acts that constitute the offense in order to convict was error.

In *People* v. *Diedrich* (1982) 31 Cal.3d 263 [182 Cal.Rptr. 354, 643 P.2d 971], our Supreme Court reiterated the requirement of instructing the jury that unanimous agreement had to be reached on at least one crime shown by the evidence. The court also recognized an exception to this rule developed over the years, sometimes referred to as the "continuous conduct exception." (See *People* v. *Madden* (1981) 116 Cal.App.3d 212, 218 [171 Cal.Rptr. 897].)

In the cases of *People* v. *Howes* (1950) 99 Cal.App.2d 808 and *People* v. *James* (1960) 179 Cal.App.2d 216 [3 Cal.Rptr. 648], the courts were presented with the question whether proof of several small thefts from the same person or entity over a period of time, none amounting to grand theft, was sufficient evidence to convict of grand theft rather than several acts of petty theft. In both cases the courts found that there was sufficient evidence from which the jury could have reasonably concluded that the takings were the part of an overall plan or scheme and the conviction of the greater crime was affirmed. In *People* v. *Ewing* (1977) 72 Cal.App.3d 714, 717 [140 Cal.Rptr. 299], the court was presented with the question whether the trial court should have given a *sua sponte* jury instruction declaring that a finding of guilt would require the jurors to agree that defendant committed the same act or acts. It concluded that where the information alleged a course of conduct in statutory terms which had occurred between two designated dates and the issue before the jury was whether the accused was guilty of the

course of conduct, not whether he had committed a particular act on a particular day, such an instruction was inappropriate and its omission not error.

In the recent case of *People* v. *Gonzalez* (1983) 141 Cal.App.3d 786, 791 [190 Cal.Rptr. 554], the court pointed out that, "[a] unanimity instruction is required only if the jurors could otherwise disagree which act a defendant committed and yet convict him of the crime charged." (*People* v. *McIntyre* (1981) 115 Cal.App.3d 899, 911 [176 Cal.Rptr. 3].)

■ In this case the appellant was charged in count I with the crime of grand theft by embezzlement in an amount exceeding $25,000 from Pacific Buyers Club from the period July 2, 1978, to December 3, 1978. The charge alleged that the appellant engaged in a continuous course of conduct of theft from a single victim over a period of five months with a single fraudulent intent or objective. Both the prosecuting and defense attorneys and the judge conducted the case according to this theory during the entire course of this protracted trial. None of the individual acts of taking by appellant was established to be in excess of $25,000. The jury must have concluded, therefore, that the appellant did indeed engage in a continuous course of conduct with a single fraudulent intent and that he obtained property in excess of $25,000. It is highly unlikely that disagreement occurred or that there would have been a different result had the instruction been given. We find that the failure to give CALJIC No. 17.01 as to count I was not error.

■ In count III appellant was accused of theft from Williams and Pereira on August 25, 1978, of property exceeding $25,000 in value. The significance of the date August 25, 1978, is difficult to understand. Mrs. Williams testified that she gave $24,000 to appellant on August 25, 1977, and Mr. Pereira gave him a similar sum in December 1977. As noted, the jury found the enhancement allegation to be not true. Inasmuch as appellant received a total of $48,000 from Williams and Pereira the jury must have agreed that only one of the takings amounted to a criminal act. The evidence established clearly that the acts of obtaining money from both victims could have been found criminal but it cannot be determined that the jurors unanimously agreed upon which act constituted the offense. It was error to fail to give CALJIC No. 17.01 *sua sponte* as to the necessity of finding unanimously on the act that constituted the offense alleged in count III.

Among the instructions given and not objected to by appellant's trial counsel were instructions relating to the dollar amount distinction between grand and petty theft; there was no instruction that petty theft was a lesser included offense of grand theft. Both counsel argued to the jury that the distinction between grand and petty theft did not apply to this case and that defendant

was either guilty of grand theft or he was not guilty. The court then instructed there were only two possible verdicts to each count, that is guilty or not guilty of grand theft.

After jury deliberation commenced the prosecutor addressed the court and appellant's trial counsel regarding possible juror confusion from the instruction given on the difference between grand and petty theft. The court, on its own motion, recalled the jury and gave an instruction that petty theft was a lesser included offense on counts I, III and IV and provided them with three alternative verdict forms for each of the counts: i.e., guilty of grand theft, guilty of petty theft, and not guilty. The court did not allow either counsel additional argument. As noted, the jury returned verdicts of guilty of grand theft on all three counts.

Both parties on appeal and appellant's trial counsel concede that there was no evidence from which the jury could reasonably have concluded that any offense committed might constitute petty theft. The instructions thereon were clearly unnecessary. (*People* v. *Morrison* (1964) 228 Cal.App.2d 707 [39 Cal.Rptr. 874].) Appellant claims, however, that to preclude defense argument on an admittedly unnecessary instruction made defense counsel ineffective and deprived defendant of a fair trial (citing Pen. Code, § 1093.5 and *People* v. *Sanchez* (1978) 83 Cal.App.3d Supp. 1 [147 Cal.Rptr. 850]). Such a contention has no merit in this case. In *Sanchez* the trial court changed instructions affecting the very foundation of the defense in the middle of defense counsel's argument, thereby rendering counsel and his argument totally ineffective. ■ Here, the court erroneously added instructions after both counsel had concluded argument. The effect of the instructions here was to give the defendant the possible benefit of a finding on a lesser included offense to which he was not entitled. The jury did not find appellant guilty of the lesser included offense and no miscarriage of justice occurred. (Cal. Const., art. VI, § 13.) The error was harmless. (See *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

*Contentions re Sufficiency of the Evidence*

Appellant also challenges his conviction on counts I and IV on the grounds that the evidence was not sufficient to prove all essential elements of the offenses alleged and that the evidence was insufficient to prove the allegation that the value of the property taken exceeded $25,000 pursuant to section 12022.6, subdivision (a), as found on count I.

■ We must "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that

is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].) ■ There was abundant evidence that appellant had the trust and confidence of the ICC shareholders and members; that appellant purchased Daniel Market with corporate funds for his own benefit; that he commingled sums of money from Market and ICC; that he converted these sums for his own and Market's use; that appellant had no funds other than those earned or taken from ICC; and that the resulting ICC losses exceeded a total of $25,000. The jury rejected appellant's testimony that his acts had been ratified by the corporation, or were done for the good of the corporation, or that the corporate funds had been repaid.

■ There was also sufficient evidence on count IV that appellant represented to Mr. Lowery that appellant would obtain a refrigerator for him for $681.94; that the money was received by appellant from Lowery when appellant knew that he was going to close the business and leave town; and that appellant took the money for his own use and with the specific intent to defraud Lowery and that Lowery never received the refrigerator. The fact that appellant may subsequently have ordered a refrigerator and paid for it with an insufficient funds check does not preclude a jury finding that appellant knowingly made a false statement with the intent to defraud Lowery at the time the money was paid and received.

The judgment is reversed as to count III and is affirmed as to all other counts.

Stone, P. J., and Gilbert, J., concurred.