Filed 2/11/16  P. v. Goff CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D066662 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD241342) |
| KYLA RENEE GOFF, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Charles R. Gill and Amalia L. Meza, Judges.  Affirmed in part; reversed in part; remanded with directions.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler and Julie L. Garland, Assistant Attorneys General, Eric Swenson and Barry Carlton, Deputy Attorneys General for the Plaintiff and Respondent.

A jury convicted Kyla Renee Goff of grand theft by an employee (Pen. Code,[1] § 487, subd. (b)(3); count 1), fraudulent appropriation of property by an employee (§ 508; count 2), and use of personal identifying information of another (§ 530.5, subd. (a); count 4). It was unable to reach a verdict on a charge of forgery by use of another person's access card (§ 484f, subd. (b); count 3); the court declared a mistrial on that charge and dismissed it. As to counts 1 and 2, the jury left blank allegations that the amount of money Kyla[2] misappropriated exceeded $65,000 (§ 12022.6, subd. (a)(1)) or $200,000 (§ 12022.6, subd. (a)(2)). The court ordered suspension of execution of Kyla's sentence for three years, placed her on formal probation on condition she spend 365 days in custody, and ordered that she waive all past and future section 4019 credits.

Kyla contends: (1) the court failed to instruct the jury regarding unanimity; therefore, all her convictions should be reversed; (2) counts 1 and 2 should be reversed because the court erroneously instructed the jury about general and specific intent; and (3) count 2 should be reversed because the court erroneously instructed the jury regarding her reasonable belief she had permission to take the property. The People concede that counts 2 and 4 must be reversed for lack of a unanimity instruction, but argue that a unanimity instruction was not required for count 1, which was a continuing offense. We accept the concession as properly made and find no error regarding count 1. We reverse counts 2 and 4, and otherwise affirm the judgment.

---

[1]     Statutory references are to the Penal Code.
[2]     We refer to the appellant by her first name to avoid confusion. Her husband, Clark Goff, was also charged with similar crimes, but he is not a party to this appeal.

FACTUAL BACKGROUND

*Prosecution Case*

Starting in 2008, Cal Johnson, the owner of a recycling business called American Recycling, hired Kyla to help him straighten out the company's books and operate the business because Kyla had represented to Johnson that she was as good as a certified public accountant. Johnson also hired Clark, paid them jointly $100,000 per year, and let them live in his guest house rent free. The Goffs assumed the duties of making weekly cash withdrawals from the bank and moved a cash safe from Johnson's home, keeping it with them at the guest house. The Goffs directed the company's cashiers to give them cash for various expenses, sometimes without providing receipts to the cashiers. Kyla told one of the cashiers that if the cashier needed anything she should contact the Goffs, and not Johnson.

At the end of 2009, when the Goffs were leaving for a vacation, Johnson needed to take over their job and therefore "hounded" Kyla for the bookkeeping records; she eventually sent him a partial spreadsheet. Johnson thereafter discovered that $10,000 was missing from the safe. When Kyla returned from her vacation, Johnson asked her to explain the missing funds, and she immediately said, "Well, I didn't steal it." She telephoned Clark and told him to come home immediately. Clark and Kyla packed as much of their belongings as could fit in their car and fled to Las Vegas.

Johnson hired a forensic accountant to review the company's financial records. Johnson testified that Kyla used company funds to write two unauthorized checks payable to the IRS for penalties incurred by Clark and Kyla's son in the amounts of

3

$10,000 and $7,100 respectively. Some company checks were used to pay the Goffs' phone bills and credit cards. Some checks were made out to Kyla or Clark. Approximately $86,000 was paid to the Goffs from the cash register without supporting documentation. The Goffs used company funds for many unauthorized expenses, including purchases of a camera, car parts, beach chairs, parking expenses, Disneyland and Universal Studios tickets, restaurant meals, gas bought out-of state, and airline tickets for the Goffs and their family members.

Johnson testified that despite the fact he had paid the Goffs by check and not through a certain payroll process, at one point Kyla, without Johnson's permission, put Clark on the payroll and paid him an additional $5,000 each month. Kyla at times also paid herself an additional $8,333 monthly. The bookkeeping records were altered several times, such that some checks were written for one amount but a different amount was recorded on its carbon copy. The accountant estimated that during the time Kyla was bookkeeper, $508,630 was misappropriated from the company.

*Defense Case*

At trial, Kyla denied stealing $340,000 in cash from Johnson. She provided varying explanations for the different expenses Johnson claimed were unauthorized. Specifically, she testified that when she made certain purchases for the company, Johnson typically told the Goffs to pay for it out of their funds and reimburse themselves from the cash register. She claimed sometimes they used their credit cards, and sometimes Johnson gave them his credit card to use. Kyla testified they paid for Johnson's personal

4

items in that same way, and he asked them to treat those as business expenses so he could reduce his income tax bill.

Kyla testified she helped Johnson save $400,000 on his IRS payments and out of gratitude he loaned her money to pay Clark's and Kyla's son's IRS penalties. According to Kyla, she used company checks to pay the IRS. She explained that with Johnson's permission, she used company checks to pay her salary and Clark's by separate checks for three months because the check stubs would provide needed proof of employment. She stated they reimbursed Johnson for those three months' amounts.

According to Kyla, Johnson agreed to pay their phone bill and planned to deduct the expense for tax purposes. Johnson had agreed to pay her family's travel expenses in San Diego. Johnson also agreed to pay for their car's fuel. Moreover, they purchased fuel for his own vehicles. Regarding some of the undocumented expenses that were reimbursed, Kyla testified: "[Johnson] spent a lot of money on surveillance and spying equipment. And we would pay for that stuff for him at times. And we would reimburse ourselves. There would not be receipts from [certain individuals] hired."

DISCUSSION

I.

*Counts 2 and 4 Required a Unanimity Instruction*

We agree with the parties that as to counts 2 and 4, the trial court's failure to give a unanimity instruction was prejudicial error.

A.  *Legal Principles*

We review an assertion of instructional error de novo.  (See *People v. Shaw* (2002) 97 Cal.App.4th 833, 838.)  Whether the trial court should have given a "particular instruction in any particular case entails the resolution of a mixed question of law and fact," which is "predominantly legal."  (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)  As such, it should be examined without deference.  (*Ibid*.)

In a criminal case, a jury verdict must be unanimous.  (*People v. Collins* (1976) 17 Cal.3d 687, 693; Cal. Const., art. I, § 16.)  This means that each individual juror must agree the defendant committed a specific offense.  (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*).)  Therefore, when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes, or the trial court must instruct the jury sua sponte that it is required to unanimously agree on the same criminal act.  (*People v. Riel* (2000) 22 Cal.4th 1153, 1199.)

A unanimity instruction " 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' "  (*Russo, supra,* 25 Cal.4th at p. 1132, quoting *People v. Sutherland* (1993) 17 Cal.App.4th 602, 612.)  Similarly, the instruction is " 'designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count.' "  (*Russo, supra,* 25 Cal.4th at p. 1132.)

6

B. *Analysis*

The People alleged Kyla had committed several different acts of fraudulent appropriation of property (count 2) and personal use of the identifying information of another (count 4). As set forth in detail above, Kyla defended against the different charges in different ways. Specifically, she testified Johnson loaned her funds in some instances; gave her gifts in gratitude for her work in other instances; instructed her to make some expenditures so that he could obtain a tax benefit; and authorized the Goffs to pay certain expenses with their money and reimburse themselves with company funds. Therefore, in the absence of instruction regarding unanimity, the jurors possibly convicted Kyla for the different crimes without agreeing on which wrongful acts she had committed. Here, that is not just a remote possibility, because despite the prosecutor's argument, based on the accountant's calculations that the Goffs were responsible for Johnson losing at a minimum $340,000 dollars and possibly more than $500,000, the jury failed to find Kyla had caused Johnson to lose even $65,000. Therefore, the jurors rejected many of the claims of misappropriation, and possibly did not agree on the same ones. We conclude the error was prejudicial and counts 2 and 4 must be reversed.

II.

*Count 1 Did Not Require a Unanimity Instruction*

Kyla was convicted in count 1 of grand theft under section 487, subdivision (b)(3), which provides that the crime is committed "[w]here the money, labor, or real or personal property is taken by a servant, agent, or employee from his or her principal or employer and aggregates nine hundred fifty dollars ($950) or more in any 12 consecutive month

7

period."[3]  A "narrow" exception to the rule requiring a unanimity instruction has developed over the years.  (*People v. Gunn* (1987) 197 Cal.App.3d 408, 412 (*Gunn*); *People v. Madden* (1981) 116 Cal.App.3d 212, 218 [exception "quite limited"].)  The "continuous course of conduct exception" is actually a "conglomerate" category comprised of several different types of situations.  (*People v. Diedrich* (1982) 31 Cal.3d 263, 282.)

The cases considering the necessity of a unanimity instruction for embezzlement and similar offenses have looked to whether the facts of that particular case fall within a subset of the continuing course of conduct exception, "when the acts are so closely connected that they form part of one and the same transaction, and thus one offense." (*Gunn, supra,* 197 Cal.App.3d at p. 412.)  In applying this exception, courts often assess whether defendant engaged in a course of conduct "with a single fraudulent intent." (*People v. Daniel* (1983) 145 Cal.App.3d 168, 175 (*Daniel* ) [no instruction required where defendant "engaged in a continuous course of conduct of theft from a single victim over a period of five months with a single fraudulent intent or objective"]; *People v. Howes* (1950) 99 Cal.App.2d 808, 821 [no instruction required where defendant convicted of grand theft as his "various acts . . . were all motivated, generally, 'by one design, one purpose, [and] one impulse' "].)  For example, in *Daniel*, the jury found that

---

3    The court instructed the jury with CALCRIM No. 1803 that to prove the defendant is guilty of a single grand theft, the People must prove that "[t]he combined value of the property or services that the defendant obtained during a period of 12 consecutive months was $950 or more."

8

defendant stole property in excess of $25,000. (*Daniel, supra,* 145 Cal.App.3d at p. 175.) Because each of the individual acts alleged was under $25,000, the "jury must have concluded" that defendant "did indeed engage in a continuous course of conduct." (*Ibid.*) Courts have reached similar results where several acts of petty theft make up a single charge of grand theft, and the defendant's conviction for grand theft therefore reflects the jury's acceptance of the entire course of conduct exception. (See, e.g., *Howes,* at p. 820.)

C.  *Analysis*

Here, as in *Daniel, supra,* 145 Cal.App.3d 168, the jury must have concluded that Kyla's different acts of grand theft, in the aggregate, met the statutory requirement of $950 or more, otherwise it could not convict her of grand theft under the instructions given.  Kyla argues, "Respondents' continuous course of conduct exception fails because many of the transactions in question were for more than $950 and [Kyla] offered different defenses for those transactions.  For instance, one of the allegedly fraudulent transactions was for [her] payment of her federal taxes of $10,339.42.  This transaction alone established a violation of count one if it was fraudulent."  But Kyla overlooks that section 487, subdivision (b)(3) provides that the amount of the employer's loss could exceed $950 by an undefined amount, which likely was some number less than $65,000 because the jury did not find that the value of her theft exceeded $65,000.  But the jury could reasonably have concluded she stole an amount between $950 and $65,000 during a 12-month period.

III.

*Claim of Instructional Error*

Kyla contends that the court erroneously instructed the jury that grand theft is a general intent crime. As we explain, the error was not prejudicial.

A. *Background*

The court instructed the jury with CALCRIM No. 252: "The crimes and other allegations in counts 1 through 4 require proof of the union or joint operation of act and wrongful intent. The following crimes and allegations require general criminal intent. Grand theft by an employee as charged in count 1." That instruction also states that "a person acts with wrongful intent whether he or she intentionally does a prohibited act. However, it is not required that he or she intend to break the law." As to count 1 specifically, the court instructed the jury with CALCRIM No. 1800 that the prosecutor had to prove the defendant: (1) took possession of property owned by someone else; (2) took the property without the owner's consent; (3) intended to deprive the owner of the property; and (4) moved the property for even a small distance.

B. *Legal Principles*

Contrary to the court's instruction, grand theft is a specific intent crime. (*In re Jesus O.* (2007) 40 Cal.4th 859, 866.) Therefore, the court erred by instructing otherwise. However, reversal is not required unless it is reasonably likely the jury misunderstood and misapplied the court's instructions to appellant's detriment. (*People v. Smithey* (1999) 20 Cal.4th 936, 963-964.) In making this determination, we must consider the court's instructions "as a whole, in light of one another," without "singl[ing] out a word or

10

phrase." (*People v. Holmes* (2007) 153 Cal.App.4th 539, 545-546.) We must also keep in mind that " ' " '[t]he absence of an essential element in one instruction may be supplied by another or cured in light of the instructions as a whole.' " ' " (*People v.. Musselwhite* (1998) 17 Cal.4th 1216, 1248.) And, we must presume the jurors were intelligent people capable of understanding and correlating all of the instructions they received. (*Ibid.*)

This is not the first case in which a general intent instruction has been given in conjunction with a specific intent offense. In *People v. Zerillo* (1950) 36 Cal.2d 222 and *People v. Lyons* (1991) 235 Cal.App.3d 1456, the courts considered this very situation and found it significant that while the general intent instruction speaks broadly to the issue of "wrongful intent," it also directs the jury to consider the instruction in light of the substantive offense or act at issue. In that way, "the general intent instruction is dependent for its effect upon the substantive provisions of the law to which it is applied." (*Lyons,* at p. 1463.) If the court's instructions on those substantive provisions plainly and accurately describe the intent requirement for the charged offense, those provisions will be deemed to control over the general intent instruction. (*Ibid.*; *Zerillo,* at p. 232.)

C. *Analysis*

The court instructed the jury with CALCRIM No. 252 that a person acts with wrongful intent when he or she intentionally does a prohibited act. That instruction also explained that the "act required is explained in the instructions for that crime or allegation." After that, the court defined the crime of theft in four basic elements, one of which was that the defendant "intended to deprive the owner of [the stolen property] permanently." The court also made it clear to the jury that in order to find appellant

11

guilty of that offense, the People must prove this element beyond a reasonable doubt. (CALCRIM No. 220)  Taken together, these instructions conveyed the correct intent requirement for the crime of grand theft.

Although the court should not have described that offense as being a general intent crime, this was tantamount to "giv[ing] the wrong label for the correct substantive instructions."  (*People v. Lyons, supra*, 235 Cal.App.3d at p. 1463.)  The error was "patently harmless" under the circumstances presented.  (*Ibid*.)

Given we are reversing the count 2 conviction, we need not address Kyla's contention regarding the court's instruction that her belief was not in good faith if it was unreasonable.  If and when the People seek a retrial, she may raise the issue in the trial court.  (Accord, *People v. Smith* (2005) 132 Cal.App.4th 1537, 1547-1551 [reversing a conviction for failure to correctly instruct regarding unanimity and outlining procedure by which a defendant raises a special plea of once in jeopardy].)

DISPOSITION

The judgment on counts 2 and 4 is reversed; in all other respects the judgment is affirmed. The superior court is directed to prepare an amended abstract of judgment consistent with this opinion and forward a certified copy of it to the Department of Corrections and Rehabilitation.


O'ROURKE, J.

WE CONCUR:


BENKE, Acting P. J.


IRION, J.