[No. H009733. Sixth Dist. Nov. 6, 1992.]

In re CHRISTOPHER S., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER S., Defendant and Appellant.

## COUNSEL

Marylou Hillberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan, Rene A. Chacon and David D. Salmon, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PREMO, J.**—Christopher S. appeals from an order declaring him a ward of the juvenile court under Welfare and Institutions Code section 602, based on the finding that he possessed lysergic acid diethylamide (LSD) for sale and committed an assault with a deadly weapon. Appellant argues that his due process rights were violated by the superior court clerk's failure to send notice of his notice of appeal for nearly 16 months after the notice of appeal was filed. He further argues that the juvenile court committed reversible error by reading the probation report prior to the conclusion of the contested jurisdictional hearing. We affirm.

### BACKGROUND

On December 5, 1990, a petition filed under Welfare and Institutions Code section 602 alleged that appellant, age 14, had possessed LSD for sale (Health & Saf. Code, § 11378) and sold LSD (Health & Saf. Code, § 11379). On December 7, 1990, another petition was filed alleging that appellant had committed an assault with a deadly weapon against a 12-year-old acquaintance by threatening her with a knife after she denied any knowledge of the cocaine he and his companion had demanded. (Pen. Code, § 245, subd. (a)(1)).

A jurisdictional hearing was held on both petitions on January 15, 1991. Appellant admitted count 1 of the December 5 petition, and count 2 was dismissed. After hearing the testimony of the victim, a witness, and appellant, the juvenile court sustained the allegation of the December 7 petition. The court thereafter proceeded to disposition. Recognizing appellant's significant drug abuse problem, the court committed appellant to the juvenile rehabilitation facilities for a maximum term of four years and eight months, with a specific recommendation that he be placed in the Wright Center for treatment.

### DISCUSSION

#### 1. *Delay on Appeal*

Appellant's notice of appeal was filed on January 18, 1991, challenging the grounds for sustaining the December 7 petition. The superior court clerk

did not mail notice of this filing, however, until May 5, 1992. Citing federal authority, appellant contends that the delay resulting from this oversight violated his due process right "to a speedy determination of his appeal."

Several federal cases have recognized that excessive delay in the appellate process may violate a defendant's due process rights. "[W]hen a state provides a right to appeal, it must meet the requirements of due process and equal protection. . . . [D]ue process can be denied by any substantial retardation of the appellate process . . . ." (*Rheuark* v. *Shaw* (5th Cir. 1980) 628 F.2d 297, 302.) On the other hand, "not every delay in the appeal of a case, even an inordinate one, violates due process." (*Id.* at p. 303.) Such claims are tested in the federal courts by applying four factors set forth in *Barker* v. *Wingo* (1972) 407 U.S. 514, 530-532 [33 L.Ed.2d 101, 116-117, 92 S.Ct. 2182, 2192-2193], for evaluating the right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) the degree to which the defendant asserted his or her right; and (4) the degree of prejudice to the defendant. All four factors are to be considered together in light of the circumstances of the case, as part of a "difficult and sensitive balancing process." (*Id.* at p. 533 [33 L.Ed.2d at p. 118]; see also *Coe* v. *Thurman* (9th Cir. 1990) 922 F.2d 528, 532.)

 In this case we have no doubt, nor does the Attorney General dispute, that the delay was both significant in length—nearly 16 months—and caused entirely by the neglect of a state official to perform its legal duty (Cal. Rules of Court, rule 31(c)). We further find, although the Attorney General argues otherwise, that appellant, a minor, 14 years old at the time of the order, is not responsible for this delay by failing to pursue the status of his appeal. Thus, each of the first three prongs of the federal due process test is met under the circumstances presented here.

 The fourth prong of the federal test requires analysis of three additional factors: (1) the oppressiveness of incarceration pending appeal; (2) the anxiety and concern of the defendant awaiting the outcome of the appeal; and (3) impairment of the grounds for appeal or of the viability of the defense upon retrial. (*Coe* v. *Thurman, supra,* 922 F.2d at p. 532; *U.S.* v. *Antoine* (9th Cir. 1990) 906 F.2d 1379, 1382; *U.S.* v. *Tucker* (9th Cir. 1992) 964 F.2d 952, 954-955.)

 Appellant's assertion of prejudice appears to focus on the second of these factors. He reminds us that he is a juvenile with the right to an expeditious determination of his appeal, and that delays such as the one he has experienced may have a greater impact upon minors. He does not argue,

however, that he has experienced any greater anxiety and concern than any other juvenile awaiting the outcome of an appeal,[1] or that his grounds for appeal are impaired in any way. He does not deny that his confinement would not be oppressive if the appeal is found unmeritorious, and he makes only the briefest, most indirect suggestion that, because the witnesses are juveniles, his defense upon rehearing would be compromised.

We conclude appellant has failed to establish prejudice. First, appellant's confinement cannot be regarded as oppressive, because the underlying contention—that the court's reading of the dispositional report before finding jurisdiction was reversible error—is without merit. As is said in criminal convictions, "the incarceration would be unjustified and thus oppressive were the appellate court to find [the appellant's] conviction improper. If it affirms the conviction, however, the incarceration will have been reasonable." (*Coe* v. *Thurman, supra,* 922 F.2d at p. 532; see also *U.S.* v. *Antoine, supra,* 906 F.2d at p. 1382 [no oppressive confinement if conviction proper]; accord, *U.S.* v. *Tucker, supra,* 964 F.2d at p. 955.) Second, appellant has not asserted "any particular anxiety suffered here that would distinguish his case from that of any other [juvenile] awaiting the outcome of an appeal." (*U.S.* v. *Antoine, supra,* 906 F.2d at p. 1383.) Finally, because appellant's sole ground of appeal does not result in the need for a rehearing, the delay cannot be said to have compromised appellant's ability to refresh the memories of witnesses or locate new evidence; thus, *U.S.* v. *Tucker, supra,* 964 F.2d 952, on which appellant relies, is inapposite. Because no prejudice has resulted from the delay in processing appellant's notice of appeal, no due process violation has occurred.

The result is the same when the delay is examined under California authority. In *People* v. *Sylvia* (1960) 54 Cal.2d 115, 125 [4 Cal.Rptr. 509, 351 P.2d 781], our Supreme Court considered the effect of an excessive delay in filing the reporter's transcript. Citing two earlier appellate court decisions,[2] the Supreme Court held that such a delay did not deny the defendant due process: "As a result of these irregularities an overly long period of time elapsed before the defendant received an adequate hearing on appeal. An adequate hearing has now been had. The resolution of the questions presented on the merits of this appeal adversely to the defendant makes the delay immaterial." 54 Cal.2d at p. 125; see also *People* v. *James* (1960) 179 Cal.App.2d 216, 221 [3 Cal.Rptr. 648] [no due process violation or prejudice

---

[1]It would indeed be difficult to make this argument, since appellant has not been confined for the entire period of the delay. On July 22, 1991, six months after he filed his notice of appeal, appellant was released from the rehabilitation facility and continued as a ward on probation.

[2]See *People* v. *Patterson* (1959) 172 Cal.App.2d 334, 336 [342 P.2d 272] and *People* v. *Harrison* (1954) 129 Cal.App.2d 197, 203 [276 P.2d 188].

shown in delayed filing of respondent's brief]; but see *People* v. *Serrato* (1965) 238 Cal.App.2d 112 [47 Cal.Rptr. 543] [defendant's right to effective appeal violated by complete lack of reporter's transcript].) In this case, as we conclude below, the sole substantive issue raised in this appeal must be resolved against appellant; accordingly, no prejudice has resulted from the delay on appeal.

## 2. *Probation Report*

■ Appellant contends that the juvenile court prejudicially erred by reading the probation report before making its jurisdictional finding, contrary to the rule announced in *In re Gladys R.* (1970) 1 Cal.3d 855 [83 Cal.Rptr. 671, 464 P.2d 127]. The Attorney General responds that the record does not suggest the court failed to perform its duty properly, and that the issue is waived in any event by appellant's failure to object at the hearing.

In *In re Gladys R.*, the Supreme Court held that Welfare and Institutions Code sections 701, 702, and 706 prohibit consideration of the social study prior to the jurisdictional hearing. ■ As explained in *In re Joseph G.* (1970) 7 Cal.App.3d 695, 700 [87 Cal.Rptr. 25], "The bifurcated juvenile court procedure prescribed in Welfare and Institutions Code sections 701, 702 and 706 . . . is designed to provide a jurisdictional hearing at which competent evidence is adduced, and to make certain the jurisdictional order is made *before* the social study report containing material irrelevant to the issue of guilt is considered." This judicial rule is now explicitly codified in California Rules of Court, rule 1488(c), which states: "Except as otherwise provided by law, the court shall not read or consider any portion of a probation report relating to the contested petition prior to or during a contested jurisdiction hearing."

■ The juvenile court commenced the proceedings in this case by expressing its understanding that the December 5, 1990, petition had been resolved. The court then accepted appellant's admission of count 1 of that petition and dismissed count 2. Upon defense counsel's request, the court deferred disposition until the conclusion of the hearing on the December 7, 1990, petition.

Immediately after finding the allegations in the December 7 petition true, the following discussion took place: "[THE COURT:] Are the parties prepared to proceed with a disposition at this time, or do you wish to have the matter set over for another date? We should do the disposition on the December 5 petition at the same time, and apparently we don't need any updated reports on that.

"[DISTRICT ATTORNEY]: Your Honor, I believe the recommendation combines both petitions.

"THE COURT: Does it?

"[COURT OFFICER]: It does.

"THE COURT: Mr. Gillan [defense counsel], are you ready to proceed now?

"MR. GILLAN: Yes, Your Honor.

"THE COURT: Okay.

"MR. GILLAN: Briefly . . . there are two correspondences that the minor has written to the court . . . . [¶] [] If I could give these to the court and have that added to the court's file, and I would like to address the issue of disposition when the court has had an opportunity to read Chris's letter.

"THE COURT: Okay. (Reading letters.) Okay, I've had an opportunity to read the probation officer's report and the attachments thereto. The report that I have was dated back in mid-December. Is that the latest report we have?

"[COURT OFFICER]: That's correct, uh-huh, Your Honor. The recommendations for the ranch remain the same.

"THE COURT: Okay. And I've also had an opportunity to read Dr. Salerno's (phonetic) report, and quite a few messages or notes or letters from Chris himself, and at this time I will admit all of those into evidence."

The court then heard argument on disposition and rendered its decision committing appellant to the juvenile rehabilitation facilities.

On this record it appears that the juvenile court did read the probation report before it concluded jurisdictional proceedings. We do not agree with appellant, however, that this error is reversible under the circumstances of this case. First, as appellant concedes, no objection was made at the hearing. It is well established that procedural errors may not be raised at the appellate level if they were not raised in the trial court level. "[E]ven constitutional rights, including those of a minor in the area of juvenile court procedure, will ordinarily be waived by silence, i.e., by their nonassertion." (*In re James D.* (1981) 116 Cal.App.3d 810, 817 [172 Cal.Rptr. 321].)

Appellant places undue reliance on *In re Gladys R., supra,* 1 Cal.3d 855, and on *In re D.J.B.* (1971) 18 Cal.App.3d 782 [96 Cal.Rptr. 146], where the

lack of objection was held not to waive assertion of error. The only reason an objection was excused in *In re Gladys R.* was that it would have been unfair to require defense counsel to anticipate its holding, which was contrary to the prevailing interpretation of the law. The decision in *In re D.J.B.*, which posited a *general* exemption of the objection requirement, inappropriately extrapolated this fact-specific holding in *In re Gladys R.* to all situations in which a juvenile court prematurely reads the social study. We believe such error must be raised to the juvenile court or it is waived on appeal; we therefore depart from the conclusion reached in *In re D.J.B.*[3]

█ In any event, the court's error was nonprejudicial. The purpose of the rule is to prevent the making of jurisdictional findings based on irrelevant negative information contained in the probation report. (*In re Gladys R.*, *supra*, 1 Cal.3d at p. 861.) In this case, appellant never disputed the factual circumstances of his offense; he challenged only the characterization of his crime as an assault with a deadly weapon, arguing that it was more correctly denominated as brandishing a weapon. The probation report contained only an account of the incident and described appellant's personal background and history of extensive drug use. We see nothing in the report that could have affected the court's determination of the sole issue before it—whether the undisputed facts fell within the provisions of Penal Code section 245, subdivision (a)(1), or of Penal Code section 417. Thus, assuming the court did read the probation report before making its jurisdictional findings on the contested petition, reversal is not required.

### DISPOSITION

The judgment is affirmed.

Cottle, Acting P. J., and Bamattre-Manoukian, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 17, 1993.

---

[3]This situation is not unlike that of a jurisdictional hearing conducted by the same judge who has presided over a fitness hearing under Welfare and Institutions Code section 707. In such a case it is not error to conduct both hearings related to the same offense unless the minor objects. (Cal. Rules of Court, rule 1482(f); *In re James D.*, *supra*, 116 Cal.App.3d at pp. 817-818.)