Filed 6/27/14  In re Erick V. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re ERICK V., a Person Coming Under the Juvenile Court Law. | B249764 (Los Angeles County Super. Ct. No. VJ43394) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ERICK V.,<br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Stephanie M. Davis, Juvenile Court Referee.  Affirmed in part; reversed in part.

Courtney M. Selan, under appointment of the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Yun K. Lee and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## SUMMARY

The juvenile court sustained two counts of a petition under Welfare and Institutions Code section 602, finding that appellant, minor Erick V., committed the crime of robbery in the second degree in violation of Penal Code section 211, and the crime of grand theft from a person in violation of Penal Code section 487, subdivision (c), on April 10, 2013.

Appellant contends that the juvenile court appears to have improperly reviewed the probation officer's report prior to the time it was allowed to do so. Appellant also argues that grand theft from a person is a lesser included offense of the robbery count.

We affirm the robbery finding but agree that the lesser included offense of grand theft from a person should be reversed.

## PROCEDURAL BACKGROUND

On April 12, 2013, a petition was filed pursuant to Welfare and Institutions Code section 602 alleging that appellant committed two felonies: robbery in the second degree and grand theft from a person. After an adjudication hearing on May 28 and 29, 2013, the court sustained both counts, declared appellant a ward and placed him in a camp-community placement program for six months. Appellant was given 50 days of custody credit. The maximum term of confinement was set at five years. No additional time was imposed on the second count.

## FACTUAL BACKGROUND

### A. Prosecution Evidence

On April 10, 2013, at approximately 8:00 p.m., the victim Daniel A. was riding his skateboard ("cruise board") in Bell Gardens on his way to a friend's house when he saw appellant being dropped off from a car. Daniel heard appellant call out "Hey" and turned around to look, but Daniel did not know appellant[1] so Daniel assumed appellant was calling someone else and kept going, "minding [his] own business." Daniel heard the

_____

[1] Daniel had seen appellant before on his friend's street.

2

sound of running feet and looked back and saw appellant was chasing him. Daniel thought that he was going to be "jacked" or robbed so he tried to go faster on his board, but lost control. As Daniel got off the board, appellant was still chasing him and Daniel left the board behind to run. When Daniel started running, his cell phone fell out of his phone pouch. Daniel looked back to retrieve his phone but saw that appellant was still chasing him, so Daniel left the phone behind and continued to run. Daniel was afraid. As he ran toward his friend's house, Daniel saw a police officer approaching and told the officer he had been "jacked." Daniel had some trouble talking because he was scared and his adrenaline was up.

Bell Gardens Police Officer John Acosta was in his patrol car when he saw two males running toward him. Daniel looked fearful. Appellant was running behind Daniel holding a skate board. Daniel ran toward the driver's side of Officer Acosta's vehicle and Officer Acosta stopped his car. As Officer Acosta exited his patrol car, he saw appellant turn around and start walking in the opposite direction. While watching appellant, Officer Acosta spoke to Daniel and asked what was going on, but Daniel was out of breath, so Officer Acosta asked if Daniel had been "jacked." Daniel replied, "Yes" and "He's got my cell phone and he's got my skateboard." Officer Acosta ordered appellant to stop and get down on the ground. Before complying, appellant reached into his front, right pocket and threw a cell phone out.[2] Officer Acosta detained appellant.

After being taken to jail, appellant told Officer Acosta that he thought Daniel was appellant's friend, Jesse, and that he was trying to return the cell phone. Officer Acosta asked appellant why he did not say that when Officer Acosta first had contact with him, but appellant did not answer. Officer Acosta asked appellant why he had thrown his own phone to the ground and appellant denied doing so. Officer Acosta asked appellant if he was trying to get rid of Daniel's phone, but he did not answer. Neither Daniel nor Officer Acosta heard appellant yell "Jesse" or anything to the effect of "You dropped your phone" or "You lost your skateboard."

---

[2] It was later determined that the cell phone appellant threw out was his own and Daniel's cell phone was found in one of appellant's back pockets.

3

**B. Defense Evidence**

Appellant testified on his own behalf. Appellant had been drinking with friends prior to being dropped off near his home. Appellant saw someone who he thought was his friend Jesse and said, "Hey" and screamed, "Jesse." Appellant started running and saw "Jesse" drop his cell phone. Appellant picked up the phone to give back and screamed, "Jesse" again. Appellant saw flashing lights and a cop pulling out his gun. Appellant "kept walking towards" going "straight" to the officer who told him to get on the ground.

Appellant denied picking up the skateboard. Appellant still believed it was "Jesse" even though the person left the skateboard and the phone and kept running. Appellant thought "Jesse" was running because he was "playing." Appellant did not notice that Daniel was not "Jesse" until he was on the ground being arrested. Appellant did not remember throwing his phone to the ground.

Officer Miguel Torres assisted with the arrest of appellant. Appellant smelled of alcohol and seemed intoxicated to Officer Torres, with slurred speech, blood shot eyes and a swaying walk. Appellant told Officer Torres that he had consumed 40 ounces of beer. Appellant was coherent and appeared to understand what was happening.

## DISCUSSION

### I. Probation Report

Appellant contends that the juvenile court committed reversible error when it read the probation officer's report prior to making its true findings, which is impermissible under the rule announced in *In re Gladys R.* (1970) 1 Cal.3d 855. The Attorney General responds that appellant forfeited the argument by failing to object at the hearing and, in any event, any error was not prejudicial. We agree with the Attorney General's arguments and affirm the true finding of second degree robbery in count 1.[3]

---

[3] We reverse the true finding of grand theft from a person in count 2 as discussed in the next section.

4

Here, after the close of evidence and argument by counsel at the end of the adjudication hearing, the juvenile court stated: "All right. Based on the evidence presented, the court finds counts 1 and 2 to be true beyond a reasonable doubt. And the court finds that the minor's version of the facts are not credible. [¶] The court has read the probation officer's report dated April 30th. How did you want to proceed, [defense counsel]?" Defense counsel did not object. After an unreported bench conference, defense counsel indicated that she was ready to proceed with sentencing. The court stated again that it had read the probation officer's April 30th report, received the report into evidence, and sentenced appellant as previously stated.

In *In re Gladys R.*, *supra*, 1 Cal.3d 855, the Supreme Court stated that the history of Welfare and Institutions Code sections 701, 702 and 706 clearly indicated that proceedings in juvenile court were intended to be bifurcated: the court was to first determine whether the facts of a case supported the jurisdiction of the court to determine a wardship, and *thereafter* to consider a social report to determine the appropriate disposition of the ward. (*Gladys R.*, *supra*, 1 Cal.3d at pp. 859-860.) Thus, the Supreme Court found that the juvenile court in that case had "committed reversible error in reviewing the social study report before the jurisdictional hearing." (*Id.* at p. 858.) The purpose of this rule is "to prevent the making of jurisdictional findings based on irrelevant negative information contained in the probation report." (*In re Christopher S.* (1992) 10 Cal.App.4th 1337, 1345.)

While appellant acknowledges that defense counsel failed to object to the court's "apparent premature reading of the probation officer's report," he argues that his case "mirrors" *Gladys R.* and the oversight should be forgiven. *Gladys R.*, however, excused the failure to object because it would have been "unfair to require defense counsel to anticipate its holding, which was contrary to the prevailing interpretation of the law." (*Christopher S.*, *supra*, 10 Cal.App.4th at p. 1345; but see *In re D.J.B.* (1971) 18 Cal.App.3d 782, 784-785.) Thus, "such error must be raised to the juvenile court or it is

5

waived on appeal." (*Christopher S.*, *supra*, 10 Cal.App.4th at p. 1345.)[4]  Accordingly, we conclude that appellant forfeited any argument of error.

Even if not forfeited, the error does not require reversal.  We review the error under the harmless error standard.  (*People v. Watson* (1956) 46 Cal.2d 818, 836 [appellate court reviews entire record to determine if "it is reasonably probable that a result more favorable to the appealing part would have been reached in the absence of the error"].)  Appellant argues that following aspects of the probation report are prejudicial: the narrative of the offense, the description of appellant's prior arrest history, appellant's statement that he used alcohol and marijuana and did not attend school, and statements from various individuals that appellant should be removed from the home and placed in custodial care.  We disagree.  First, the probation report's narrative of the offense did not materially differ from the evidence presented at trial.  Next, the detention report, which the juvenile court would properly have considered prior to the disposition hearing, indicated that appellant had a prior arrest record,[5] drank alcohol, was involved in gang activity, and did not attend school.  Moreover, review of the entire record shows the evidence was strong.  Both Daniel and Officer Acosta stated that Daniel was running

---

[4] Appellant also contends that the juvenile court here "did not expressly state on the record that it had read the probation officer's report prior to making the true findings (presumably the error that defense counsel would have been alerted to).  Rather it is only that there does not appear to have been any formal break in the proceedings that would have allowed the juvenile court to have read the probation officer's report *after* the true findings had been made but *before* the dispositional hearing had begun."  This argument is without merit.  On the one hand, if there was no break during which the juvenile court could have read the probation report after the true findings, defense counsel (who was present at the proceedings and not relying on a transcript) would have been aware that there was no break and therefore should have objected then.  If, on the other hand, there was a break allowing the juvenile court to read the probation report after the true findings, then there was no error.

[5] Appellant's juvenile record was also discussed during the adjudication hearing when the prosecutor sought to introduce evidence of a prior sustained juvenile petition to impeach appellant and to show intent.  After objection from defense counsel and argument, the prosecutor withdrew the line of questioning at the hearing.  Appellant does not raise this discussion as an issue on appeal.

away from appellant, that Daniel was scared, that appellant was running after Daniel, appellant had Daniel's skateboard and phone, and appellant did not yell "Jesse." When stopped by Officer Acosta, appellant threw a phone from his pocket, which was later determined to be his own and Daniel's phone was found in a different pocket. In light of this evidence, it is not reasonably probable that appellant would have obtained a more favorable result absent the error. We affirm the true finding on count 1 for second degree robbery.

## II. Grand Theft From A Person

Appellant contends, and the Attorney General's office concedes, that the juvenile court's true finding as to count 2 for grand theft from a person should be reversed as it is a lesser included offense of the court's true finding in count 1 for robbery. We agree. (*People v. Burns* (2009) 172 Cal.App.4th 1251, 1256 ["Theft in any degree is a lesser included offense to robbery, since all of its elements are included in robbery. The difference is that robbery includes the added element of force or fear."].)

## DISPOSITION

The true finding as to count 2 for grand theft from a person is reversed. The judgment is affirmed in all other respects.

NOT TO BE PUBLISHED.


CHANEY, J.


We concur:



ROTHSCHILD, Acting P. J.



JOHNSON, J.


7