Filed 2/22/22  In re E.P. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re E.P., a Person Coming Under the Juvenile Court Law. | |
| SONOMA COUNTY HUMAN SERVICES DEPARTMENT,<br><br>        Plaintiff and Respondent,<br>v.<br>J.P.,<br><br>        Defendant and Appellant. | A162605<br><br>(Sonoma County Super. Ct. No. 6122DEP) |

Following a contested six-month review hearing, the juvenile court found the return of J.P.'s daughter to his custody would create a substantial risk of detriment and ordered continued services for J.P. (Father).

Father appeals from the court's six-month review findings and orders. He contends the court's reasonable services and efforts findings are not supported by substantial evidence.  Alternatively, he argues reversal and remand is required because the juvenile court "revealed a misunderstanding of the controlling legal standards."  We will affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Father and S.U. (Mother) are the parents of E.P. (Minor), who was born in 2008.  Minor has a rare genetic muscle disorder that has required around-

1

the-clock specialized care for several years. The parents, who do not live together, shared physical and legal custody of Minor prior to this dependency case.

*Events Leading to Jurisdiction and Disposition (Prior Appeal)*

In December 2019, Minor was hospitalized and doctors concluded Minor needed a tracheostomy, but Father would not consent to tracheotomy surgery. Father described himself as Minor's "savior" and maintained he could "fix her." He was verbally aggressive with hospital staff and was banned from the hospital due to his erratic behavior.

The Department filed a dependency petition against Father. The juvenile court authorized the tracheotomy surgery, and Minor had the surgery on April 8, 2020.

In July 2020, the Department filed an amended petition alleging, "Father's behavior and resistance to expert medical advice [following the tracheotomy surgery] continues to place the child at continuing risk of physical harm." The Department recommended that Minor be placed with Mother and exit orders be adopted.

At the hearing on jurisdiction and disposition on July 13, 2020, County counsel stated that Minor's medical team and the Department had concerns about Father's ability to care for Minor now that she had a tracheostomy. After the juvenile court stated it was not "willing to basically cut one of [Minor's] parents out of her life," County counsel suggested the Department could provide "reunification services, so that [Father] could have a period of time to go through . . . training [on tracheostomy procedures] and adjust to the new reality [of Minor's needs post-surgery]" and "get father up to speed, so that there can be a continuation of the relationship." The parties then reached a negotiated settlement. Father signed a waiver of rights and

2

submitted on the social worker reports, and the court sustained the amended petition, ordered Minor to reside with Mother,[1] ordered family reunification services for Father and family maintenance services for Mother, and specified that Father had to go through the Department to communicate with Mother. The court ordered, "Father is to get all support needed for all of his trainings, including support from [Minor's] . . . current medical caregivers."[2]

Father appealed, and we affirmed the court's July 13, 2020, orders on jurisdiction and disposition. (*In re E.P.* (A160714, May 25, 2021) [nonpub. opn.].)

---

[1] The court removed Minor from Father's custody, finding clear and convincing evidence that removal was justified under section 361, subdivisions (c)(1) [substantial danger to physical health, safety, protection, or physical or emotional well-being of the minor if returned to the home] and (c)(3) [severe emotional damage].

[2] Although County counsel stated the Department was willing to offer "reunification services" to Father and the parties stipulated to a disposition that included Father receiving "reunification services," the parties now agree on appeal that "reunification services" may not be the most accurate terminology. Under Welfare and Institutions Code section 16507, subdivision (b), "Family reunification services shall *only* be provided when a child has been placed in out-of-home care, or is in the care of a previously noncustodial parent under the supervision of the juvenile court." (Italics added.) But in this case, Minor remained in the home of Mother, a previously custodial parent. Aside from the confusion on nomenclature, the parties agree the juvenile court does have authority to order services for Father. (See Welf. & Inst. Code, § 362, subd. (a) ["the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of" a dependent child].) Respondent suggests the more apt term for the services ordered for Father is "enhancement services." (See *In re Destiny D.* (2017) 15 Cal.App.5th 197, 212–213 [where the dependent child was placed with her previously custodial mother, the court had the discretion to order "enhancement services" for the father].)

*Events Leading to the Six-Month Review Orders (Current Appeal)*

For a "check in" hearing scheduled for August 12, 2020, the court filed an update from the social worker and a letter from Dr. Peter Oishi, Medical Director of the Pediatric Intensive Care Unit at UCSF. In his letter, Dr. Oishi described the care Minor required post-surgery and the specific and extensive training required for parents and other caregivers.[3]

In his update to the court, the social worker detailed the challenges of trying to obtain "trach training" for Father. UCSF refused to train Father and refused to offer a recommendation on where he could be trained. (Father had been banned from UCSF because of his erratic behavior and verbal aggression toward all staff.) Minor's at-home nursing provider likewise was unwilling to train Father or provide a referral "due to previous interactions with [Father]." Other care providers were contacted, but they did not offer tracheostomy and ventilator training nor could they offer any referrals. The social worker did locate an in-person ventilator and tracheostomy training in Los Angeles, but Father refused the option because the next training was not until August 21, 2020. Father was enrolled in a five-hour "online trach

---

[3] Dr. Oishi explained that Minor now had an opening at the neck to the trachea and required a tracheostomy tube and mechanical ventilator. He wrote that patients who are dependent on mechanical ventilation, such as Minor, "require 24/7 monitoring by a responsible trained caregiver. In most cases, this requires a minimum of 3 trained caregivers. [¶] Caregiver training includes: assigned didactic video, hands on training of tracheostomy stoma care, tracheostomy tube change, tracheostomy suctioning, medication administration (e.g., aerosolized medications), and the training in medical equipment (i.e., ventilator, humidification, emergency kits, resuscitation bag, suction devices, oxygen equipment). . . . [E]ach caregiver must receive training in 8 emergency scenarios, and must successfully complete tracheostomy care, including tracheostomy tube change, 3 times under direct observation by the medical team. . . . [In addition], primary caregivers are required to complete 48 hours of direct patient care in the hospital."

training course," which was significantly shorter than the training from UCSF and did not include training on emergency care.

It was also reported that Minor (who was just shy of 12 years old at the time) told the social worker she did not want to stay at Father's home and did not want him to have any medical responsibility for her care. Minor said that Father "made his own 'lift' [that was] very unsafe" and "has not been tested one time on a human." Regarding trach training, Minor stated that she did not want to be the person on whom Father trained. Regarding visitation, Father and Minor had supervised visits by video, and Minor wanted the visits to continue to be supervised so Father could be redirected away from discussion of her medical conditions. Minor said, "I don't want him talking about my health because he doesn't make good decisions and I feel uncomfortable when he asks about my mom." Minor told the social worker she wanted her opinions to be considered by the court for future decision making.

At the August 12 hearing, the juvenile court observed that trach training is "hard," and Father would need "hands-on trach training" because "watching a video . . . is not cutting it." The court recognized that Minor did not want Father practicing tracheostomy procedures on her, noting, "[Minor] doesn't want to be the guinea pig. She doesn't want [Father] training on her. . . . I wouldn't want to be the guinea pig either." An interim hearing was set for October 14, 2020.

For the October 14 hearing, the Department filed an interim report recommending continued family reunification services for Father and family maintenance services for Mother. The social worker reported that "efforts have been made to locate an appropriate ventilator and tracheostomy training" and a service had been identified that could provide in-person

5

ventilator training for Father at Mother's home with nursing staff present and Mother away from her home. However, Mother recently decided she did not want Father in her home under any circumstances because he had ignored her request for no contact. Minor said she would like in-person visits with Father, but she wanted the visits to be supervised. Minor's doctor recommended that Minor needed to stay home for the "foreseeable future" because safe transportation had not been determined. The doctor also noted Minor was at higher risk for complications related to Covid-19.

At the interim hearing on October 14, the juvenile court ordered supervised, in-person visits for Father for one hour per week at Mother's home with nursing staff present and "Father to follow social distancing and . . . wear a mask." Another hearing was scheduled for January 2021.

For the January 2021 hearing, the Department filed a six-month status review report again recommending continued family reunification services for Father and family maintenance services for Mother. The social worker reported it "remain[ed] consistently difficult to discuss the case with" Father.[4] Minor's at-home nursing provider refused to provide staff needed to facilitate in-person visits because they said Father threatened staff in the past. The provider also said it would terminate services for Minor if another nursing agency was used for in-person visits with Father, and Mother was looking for a new at-home nursing agency. Father requested "couples counseling" for him and Mother, but Mother was not open to participating in such services. The Department described Father's engagement with services as "inconsistent." Father had one-hour virtual visits three times per week. He

---

[4] For example, in the most recent team meeting to consider the case plan, Father would only discuss his belief that UCSF and the Department were "conspiring" "to punish him for previously threatening to sue UCSF."

was consistent in attending visits with Minor, but he continued "to push the boundaries of complying with the visitation protocols (and goals of his case plan) to not discuss [Minor's] medical treatment with her or to speak negatively of [Mother]," resulting in many visits "ending prematurely."

At the review hearing on January 27, 2021, Father expressed his frustration with the progress of his case. Father's counsel acknowledged "the logistics of getting a visit [in person] with [Minor] have been difficult." She hoped the hiring of a new at-home nursing service would allow in-person visits because "Every other option that we have looked into has not been successful." Father's counsel requested a hearing to contest the Department's recommendations.

On April 5, 2021, the juvenile court held the contested hearing. Father testified he was frustrated that very little progress had been made on reunification. His counsel asked, "What things do you think could have been done better?" Father answered, "Well, I guess with COVID, you know, there's plenty of excuses why things have not progressed. I guess, you could say that, you know, I've had a bad attitude a couple times. I just, you know, I really don't—I really don't see any progress happening from here up until now. I know it's just kind of like a stalemate since this started really." Asked what he'd like to see happen, Father responded that he would like to see his daughter.

Asked what court orders he would like, Father said he would like the court to remove "all the stipulations [i.e., conditions] to my contact with my daughter." Father acknowledged, "Obviously, [Minor] can't get up and come to my house, you know. She can't. You know, I don't see it happening in the very close future." But he saw no reason "to keep me from seeing my daughter anymore."

The social worker told the court a new nursing agency was willing to provide staffing so Father could have in-person visits. He also had identified an organization that would provide tracheostomy training for Father, but he still needed to line up nursing staff to be present for the training. (The organization that would provide training did not provide nursing staff.) The social worker estimated that in-person visits with the new nursing staff present could be set up in one to two weeks. Then, if the in-person visits were going well, training for the tracheostomy and ventilator could be scheduled to occur during in-person visits.

At the close of testimony, the juvenile court stated it was prepared to follow the Department's recommendation of continued services. The court scheduled hearings for 90 days and six months out.

In its findings and orders, the court found, among other things, that reasonable services had been provided or offered, that the Department made reasonable efforts to make it possible for the Minor to be returned to Father's home safely, and that the Department identified individuals important to Minor and "made reasonable efforts to nurture and maintain those relationships."

## DISCUSSION

A. *Sufficiency of the Evidence of Reasonable Services and Efforts*

"The 'adequacy of reunification plans and the reasonableness of the [Agency's] efforts are judged according to the circumstances of each case.' [Citation.] To support a finding reasonable services were offered or provided, 'the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas

8

where compliance proved difficult. . . .' [Citation.] 'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.'" (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1426, italics omitted.)[5]

"When we review a sufficiency of the evidence challenge, we may look only at whether there is any evidence, contradicted or uncontradicted, which supports the trial court's determination. We must resolve all conflicts in support of the determination, and indulge in all legitimate inferences to uphold the court's order. Additionally, we may not substitute our deductions for those of the trier of fact." (*Elijah R. v. Superior Court* (1998) 66 Cal.App.4th 965, 969.)

It is Father's burden "to show that the evidence is insufficient to support the juvenile court's findings." (*In re M.F.* (2019) 32 Cal.App.5th 1, 14.)

The services the parties all agreed to in this case were limited. At the hearing on disposition on July 13, 2020, the Department offered to provide services to "get [Father] up to speed on the tracheostomy procedures," and the parties stipulated to the disposition that, "Father is to get all support needed for all of his trainings. . . ." The record shows the Department continually tried to arrange such training, but circumstances outside its

---

[5] The parties now agree that "reunification services" may not be the correct term for services provided to one parent when the child remains in the home of another previously custodial parent as happened in this case (see fn. 2, above). For the purposes of Father's first appellate argument, however, we will assume the appropriate standard of review is that used for assessing the reasonableness of an agency's efforts and services in the context of a court order for reunification services.

control made this task much more difficult than the parties or the court would have predicted. Both the hospital where Minor was treated and her at-home nursing provider refused to work with Father and refused to provide referrals because of their previous negative interactions with Father. The social worker identified a program in Los Angeles, but Father initially refused to participate. Minor had to stay home because safe transportation had not been identified, but Mother objected to Father being in her home because he had not respected the no-contact order. In addition, Minor did not want Father practicing trach training on her. At the contested hearing on April 5, 2021, Father himself recognized, "there's plenty of excuses why things have not progressed," including Covid-19 and his own "bad attitude a couple times." Still, with all these challenges, the social worker had lined up an organization to provide Father tracheostomy training and was planning to move forward with in-person visits. On this record, sufficient evidence supports the court's findings of reasonable efforts and services.

Father argues the court's findings are unsupported by substantial evidence because the Department (1) failed to facilitate reasonable visitation, (2) failed to facilitate coparenting and joint counseling, and (3) failed to facilitate tracheostomy training. We are not persuaded.

As to visitation, Father was provided three supervised visits per week, which he consistently attended. That he was unable to visit with Minor in person was not unreasonable under the unique circumstances of this case, including Minor's fragile medical condition, Father's antagonism of her at-home nursing staff, and the fact that this case has progressed during a global pandemic. Indeed, Father's counsel acknowledged "the logistics of getting a visit [in person] with [Minor] have been difficult," and "[e]very other option that we have looked into has not been successful."

10

As to the lack of coparenting and joint counseling, the juvenile court did not believe such services were necessary at the time it made its findings. At the contested hearing on April 5, 2021, County counsel noted, "if both parents are interested in co-parenting, that is something that we have available." The court responded, "Let's go baby steps. Let's get [Father] back visiting his child [in person], with the training . . . so that trust can be established. And [Father] . . . is building a trust by continuing to follow court orders [for] no contact." In other words, the court wanted Father to demonstrate he could comply with the order for no contact with Mother and could have successful in-person visits with Minor. In referring to "baby steps," the court suggested it would consider co-parenting in the future depending on Father's progress and the family's needs. It was not unreasonable for the court to determine that coparenting or joint counseling was not required.

Finally, as to tracheostomy training, we have described the reasons arranging training proved so difficult.

As we have stated, the standard is "whether the services were reasonable *under the circumstances.*'" (*Tracy J. v. Superior Court*, *supra*, 202 Cal.App.4th at p. 1426, italics added.) Here, "the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that" the Department made reasonable efforts and reasonable services were provided under the unique circumstances and challenges presented in this case. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.) Because Father has not met his burden to show otherwise, his substantial evidence challenge to the court's findings fails.

B.    *Applicable Legal Standards*

Father next claims, "[R]eversal and remand is required because the record does not reveal that the juvenile court had an understanding of the

applicable standards for the hearing. The court made written findings under both the family maintenance review statutory scheme ([Welf. & Inst. Code,] § 364) and the family reunification services statutory scheme (§ 361.21, subd. (e)), and its statements on the record do not disclose it understood which statutory scheme and burdens applied." (Record citation omitted.)

Respondent argues this claim is forfeited. We agree.

" 'A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court. [Citations.] Forfeiture . . . applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings.' [Citation.] A party may not assert theories on appeal which were not raised in the trial court." (*In re C.M.* (2017) 15 Cal.App.5th 376, 385.) "Considering an issue for the first time on appeal is often unfair to the trial court, unjust to the opposing party, and contrary to judicial economy because it encourages the embedding of reversible error through silence in the trial court." (*In re M.H.* (2016) 1 Cal.App.5th 699, 713–714.) The forfeiture rule applies to claims of violation of statute. (See *In re Christopher S.* (1992) 10 Cal.App.4th 1337, 1343–1345.) Forfeiture is not mandatory, but an "appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.)

Here, the juvenile court adopted the proposed findings and orders, which were attached to the Department's six-month status review report filed January 25, 2021. Father requested a hearing to contest the Department's recommendations. But at the contested hearing held over two months later, neither Father nor his counsel argued to the juvenile court that the Department's proposed findings and orders were legally infirm or that his

12

case should be reviewed under a different statutory scheme.  Under these circumstances, Father's appellate argument is forfeited.

On appeal, Father suggests that if the juvenile court had applied the correct standard, it would have restored physical custody of Minor to him and terminated the dependency case.  However, Father did not ask for physical custody in the contested hearing.  To the contrary, he acknowledged that Minor "can't get up and come to my house" in her condition.  We see no reason to exercise our discretion to excuse forfeiture in this appeal given that Father is being provided services and he is at no risk of termination of parental rights.

## DISPOSITION

The findings and orders filed April 5, 2021, are affirmed.

_____
Miller, J.

WE CONCUR:


_____
Richman, Acting P.J.


_____
Kline, J.*


A162605, *In re E.P. / Sonoma County Human Services Dept. v. J.P.*

---

* Assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.