Filed 5/18/23  In re B.W. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re B.W. et al., Persons Coming Under the Juvenile Court Law. | |
| | D081308 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J521119A-B) |
| v. | |
| BRANDEE B., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Browder A. Willis III, Judge.  Affirmed.

Mansi Thakkar, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel and Eliza Molk, Deputy County Counsel, for Plaintiff and Respondent.

Brandee B. (Mother) appeals the juvenile court's order modifying her visits to her three-year-old and one-year-old daughters (the children) claiming she received no prior notice the court was considering modifying her visitation or any meaningful opportunity to challenge the modification. She also asserts the San Diego County Health and Human Services Agency (Agency) was required to file a Welfare and Institutions Code section 388 petition to request the modification.[1] The Agency asserts Mother forfeited both contentions by failing to raise an objection in the juvenile court. Finding Mother forfeited her claims on appeal, we affirm the juvenile court's order.

FACTUAL AND PROCEDURAL BACKGROUND[2]

In early August 2022,[3] the Los Angeles County Department of Children and Family Services (Department) filed petitions on behalf of the children alleging their health and safety were at risk due to concerns regarding Mother's mental health. (§ 300, subd. (b)(1).) Mother lived in Palmdale, at the northern end of the county. The juvenile court in Los Angeles County authorized their removal and the Department placed them with their father, T.W. (Father), who lived in San Diego. At the detention hearing, the court appointed counsel for the parents and the children, made prima facie findings on the petitions, and detained the children with Father. It ordered services for the parents and supervised visits for Mother a

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] Because Mother's sole contention on appeal relates to modification of visitation, we limit our discussion of the facts and procedural history to information necessary to determine that issue.

[3] All undesignated date references are to 2022.

minimum of three days per week for three hours per visit "as long as the Department can ensure the health and safety of all parties . . . [otherwise] visitation [would] be by any electronic means available."

In mid-August, the Department filed amended petitions to include allegations about Father. The parents denied the allegations in the amended petitions and the juvenile court set the matter for trial. In its jurisdiction-disposition report, the Department recommended that Father and the maternal grandmother not supervise Mother's visits. Because Father lived in the paternal grandmother's home in San Diego and did not plan to relocate, the Department moved to transfer the case to San Diego County.

At the contested jurisdiction-disposition hearing in September, the juvenile court struck one allegation related to Father and then sustained the petitions. It continued Mother's supervised visits for a minimum of nine hours per week with discretion to liberalize, disallowed Father from supervising or being present during visits, allowed telephone visits, and ordered a written visitation schedule. In October, the court transferred the case to San Diego County, authorized the maternal grandmother to supervise Mother's visits, and ordered the parents to report to the San Diego Courthouse for the next hearing.

At the initial hearing in San Diego County in late October, the juvenile court preliminarily accepted the transfer, appointed counsel for the parents and children, noted that Mother's prior visitation order remained in effect, and continued the matter to allow minor's counsel to meet with the children. The court informed Mother that she and her attorney could discuss the details of her visitation with the new social worker. At the next hearing in mid-November, Mother's counsel claimed that Mother had not seen the children since the case transferred from Los Angeles to San Diego.

3

Father stated that visits were "fine" and suggested overnight visits on the weekends. The court declined to order overnight visits based on insufficient knowledge of the case but gave the Agency discretion to expand visitation. It ordered Mother's visits occur "at least halfway" to Mother's location or at a place mutually agreed upon by the parents. The court noted that if in-person visits were problematic, video visits should occur, and directed Mother to keep a log of any missed visits. The court again continued the matter because a social worker had not yet been assigned to the case.

The Agency filed no formal request to modify visitation. But its acceptance of transfer report filed on November 23 recommended that visitation be modified to include: (1) two supervised in-person visits a month for Mother in San Diego; (2) daily video visits; (3) that Father not supervise the visits; and (4) funding for Mother's travel to San Diego. Father reported that Mother had daily visits with the children and it was "a struggle" for him to drive halfway to meet Mother because the youngest child gets carsick during the drive. The Agency stated that given the distance between children and Mother, nine hours of weekly visitation was "not realistic or feasible," particularly given the need for third-party supervision.

Perhaps because visitation had been discussed at the October hearing, at the continued hearing in late November everyone seems to have assumed the juvenile court would consider modifying the visitation schedule. The court began the hearing by noting the Agency's recommendation regarding Mother's visits. The Agency requested that the court make the Agency's recommendations the court's order, stating:

> "Specifically, one requesting that the court authorize funding for the mother to travel to San Diego to visit the children. I believe previously they were meeting at a halfway point to execute visitation between the children and their mom. Allowing those funds to allow mom travel

4

to San Diego, gives the Agency a little bit more flexibility in terms of being able to provide more frequent visits to the Mother, as ordered by the court."

The children's counsel submitted upon the Agency's recommendations, stating it made more sense for Mother to travel to San Diego for visits rather than "two children to be in a car for a long time."

Mother's counsel made no objection to the court considering the visitation schedule. Instead, he acknowledged the Agency's request for bi-weekly visitation, but argued for weekly in-person visits and daily video visits. Counsel added that despite the young age of the children, "[t]here has to be times you give the mother a break and bring the children to the mother and have a visit in the mother's realm." He closed his argument by requesting, at a minimum, weekly visitation in San Diego or where Mother lived.

Father's counsel stated that transportation for Father was an issue and echoed the need for funds to facilitate Mother's visits. Minor's counsel had no opposition to weekly visits in San Diego but did not "want to overwhelm the girls too much and take away from any services or anything else . . . ." The social worker then addressed the court, expressing concern that no record existed of the services Mother had participated in, a psychological evaluation was not on file, and she had not yet spoken to Mother's therapist to determine whether Mother was taking her medication. Despite these concerns, the social worker was willing to consider weekly visits in San Diego.

The court accepted the transfer from Los Angeles for all purposes, confirmed two in-person visits a month, daily video visits, and gave the Agency discretion to expand those visits "as the situation is assessed." It authorized funding to assist with Mother's transportation and directed

Mother to speak to her counsel about signing a release of information regarding Mother's progress and programing because the Agency could not expand Mother's visits without this information. After Mother inquired about returning the children to her care, the court responded that it had "confirmed and affirmed" the findings and orders from the Los Angeles juvenile court and "[a]ll prior orders not in conflict remain in full force and effect. . . ."

## DISCUSSION

Mother contends the juvenile court violated her due process rights by modifying the visitation order based on the Agency's request, without any prior notice to her that it was considering making such modification or providing her any meaningful opportunity to challenge the modification. She also claims the Agency was required to file a section 388 petition to request the modification. The Agency contends Mother forfeited her due process claims and argument that the Agency was required to file a section 388 petition by not raising these issues in the juvenile court. Mother argues in her reply brief that forfeiture does not exist on this record. Even assuming forfeiture, she contends we retain discretion to consider her claims.

"[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, superseded by statute on another ground as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 962.) The purpose of the forfeiture rule is to encourage parties to bring errors to the trial court's attention so they can be corrected. (*In re S.B.*, at p. 1293.) A second purpose is to create a record that permits review of the trial court's ruling to determine if it was erroneous. (*In re A.E.* (2008) 168 Cal.App.4th 1, 5.)

The forfeiture rule has been applied to claims of defective notice in dependency proceedings. (*In re B.G.* (1974) 11 Cal.3d 679, 689 [absence of notice of jurisdictional hearing in violation of mother's due process rights was forfeited on appeal where mother appeared with counsel at subsequent hearings and failed to raise the issue]; *Marlene M. v. Superior Court* (2000) 80 Cal.App.4th 1139, 1149 [mother's failure to object to proceeding with dispositional hearing waived defective notice claim on appeal].) " '[E]ven constitutional rights, including those of a minor in the area of juvenile court procedure, will ordinarily be waived by silence, i.e., by their nonassertion.' " (*In re Christopher S.* (1992) 10 Cal.App.4th 1337, 1344; *Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 685–686 [due process challenge forfeited because visitation issue not raised before juvenile court].)

Here, Mother appeared telephonically at the hearing with counsel and spoke with counsel regarding visitation before the hearing. At the start of the hearing, the court noted the Agency's recommended change to the existing visitation order before hearing from counsel. Mother never claimed the Agency was required to file a section 388 petition before the juvenile court could modify the Los Angeles court's visitation order or complained about a violation of her due process rights.[4] Rather, counsel noted the requested narrowing of Mother's visitation from what the Los Angeles juvenile court had ordered, acknowledged the Agency's recommendation for bi-weekly visits, and instead requested weekly in-person visits and daily video visits.

---

[4]     As Mother acknowledged in her opening brief, a juvenile court's order can be modified sua sponte by the court under section 385 upon providing the parties with notice and an opportunity to be heard. (*Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 98, 116.)

7

At no point did Mother object based on surprise, lack of notice or opportunity to be heard. Although the social worker appeared at the hearing and spoke regarding the Agency's recommended change to the existing visitation schedule, Mother's counsel did not request to cross-examine the social worker, express a need to call any witnesses, or claim he was unprepared to argue visitation. Instead, Mother fully participated in the hearing with her counsel, addressing the Agency's recommended change to her visitation schedule on its merits. A timely objection would have allowed the juvenile court to remedy any perceived error by taking a break in the hearing or granting a short continuance if Mother required more time to prepare a response or produce evidence. On this record, Mother forfeited her procedural challenges to modification of the visitation order.

Of course we understand we have the ability to consider Mother's claim despite her forfeiture, but there is no basis to do so here. Our Supreme Court described the limited exception in dependency appeals to the forfeiture rule: "[T]he appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue. [Citations.] Although an appellate court's discretion to consider forfeited claims extends to dependency cases [citations], the discretion must be exercised with special care in such matters." (*In re S.B., supra,* 32 Cal.4th at p. 1293.)

The visitation issue was not a complicated one. The parties all acted as though it was properly before the court in November, perhaps because it had been previewed at the October hearing. Mother's argument presents no important legal issue that would justify our disregarding her failure to alert the court to any concerns she had with the procedures being employed.

## DISPOSITION

The juvenile court's visitation order is affirmed.

DATO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

BUCHANAN, J.